**Slip Op. 06-181**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **SAKAR INTERNATIONAL, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant. |

**Before: Timothy C. Stanceu, Judge**

**Court No. 06-00025**

**OPINION**

[Granting defendant's motion to dismiss for failure to state a claim on which relief can be granted and denying for futility plaintiff's subsequent motion to amend its first amended complaint]

Dated: December 12, 2006

*Tuttle Law Offices* (*James C. Tuttle*) for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Domenique Kirchner*); *Brian Morris*, Senior Attorney, Office of the Associate Chief Counsel, Bureau of Customs and Border Protection, United States Department of Homeland Security, of counsel, for defendant.

Stanceu, Judge:  Plaintiff Sakar International, Inc. ("Sakar") challenges as unlawful an administrative decision issued on December 29, 2005 by the Bureau of Customs and Border Protection, United States Department of Homeland Security ("Customs"), assessing Sakar a mitigated penalty of $67,775 for the importation by Sakar of merchandise that Customs alleged to be counterfeit.  Following a motion by defendant United States to dismiss for lack of subject matter jurisdiction and the failure to state a claim on which relief can be granted, plaintiff moved to amend its complaint, which it previously had amended once as a matter of course, to set forth additional grounds in support of its assertion of subject matter jurisdiction.  The court grants

defendant's motion to dismiss the first amended complaint for failure to state a claim on which relief can be granted and denies as futile plaintiff's motion to amend that complaint.

## I. BACKGROUND

In an administrative decision dated December 29, 2005, Customs assessed Sakar a mitigated civil penalty of $67,775 "under the provisions of 19 U.S.C. § 1526(f)" and provided Sakar 30 days in which to pay the mitigated penalty. First Am. Compl. Ex. 1 at 1. According to plaintiff's pleading, Sakar did not pay the mitigated penalty and the United States has not instituted, in any court, a proceeding to recover on the penalty claim.

The facts surrounding the issuance of the December 29, 2005 decision are summarized herein based on plaintiff's pleading and the exhibits to plaintiff's submissions. On October 7, 2002, at the port of Newark, New Jersey, Sakar entered for consumption 500 travel chargers for personal digital assistants ("PDAs") and 2,311 mini-keyboards for PDAs, all of which were products of the People's Republic of China. *Id.* ¶ 16 & Ex. 1 at 2. Customs seized this merchandise on December 18, 2002 for alleged violations of subsection (e) of Section 526 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1526(e) (2000) ("Section 526"). *Id.* ¶ 18. Section 526(e) directs the seizure of merchandise bearing a counterfeit mark that is imported into the United States in violation of provisions of the Lanham Act. *See* 15 U.S.C. § 1124 (2000). With limited exceptions, merchandise so seized must be forfeited and destroyed. *See* 19 U.S.C. § 1526(e). Customs concluded that the travel chargers violated Section 526(e) because they bore a counterfeit mark of Underwriters Laboratories and that the keyboards displayed, on a function key, a counterfeit "Flying Window" trademark of the Microsoft Corporation. First Am. Compl. Ex. 2 at 1.

Plaintiff petitioned Customs for relief from forfeiture.  Customs denied Sakar any relief in the administrative forfeiture proceeding.  *Id.* ¶ 19; *see* Def.'s Opp'n to Pl.'s Mot. for Stay of Execution of Penalty Enforcement or Collection and Def.'s Mot. to Dismiss Pl.'s Compl. 3 ("Def.'s First Mot. to Dismiss").  After that denial, plaintiff did not exercise its right, as provided in the Customs regulations, to demand that Customs initiate a judicial forfeiture proceeding.  *See generally*, 19 C.F.R. Part 162, Subpart E–Treatment of Seized Merchandise (2002).  As a result, Customs destroyed the imported merchandise on August 28, 2003.  Def.'s First Mot. to Dismiss 3 & App. 8-9.

Customs then conducted an administrative civil penalty proceeding under Section 526(f), which subjects any person importing merchandise seized under Section 526(e) to a "civil fine." *See id.*; 19 U.S.C. § 1526(f).  The fine for "the first such seizure" is "not more than the value that the merchandise would have had if it were genuine, according to the manufacturer's suggested retail price, determined under regulations promulgated by the Secretary [of the Treasury]." 19 U.S.C. § 1526(f)(2).  The fine "[f]or the second seizure and thereafter" is "not more than twice the value that the merchandise would have had if it were genuine, as determined under regulations promulgated by the Secretary [of the Treasury]." *Id.* § 1526(f)(3).  Customs based the calculation of the fine on a finding that Sakar incurred penalties for two prior violations of 19 U.S.C. § 1526.  *See* First Am. Compl. Ex. 1 at 2-3 (determining, in an internal Customs memorandum dated December 14, 2005, a mitigated penalty amount of $67,775 in response to Sakar's October 20, 2005 petition for mitigation); Def.'s First Mot. to Dismiss 3-4.  In the administrative penalty proceeding, Customs originally determined the penalty amount to be $381,500 and later mitigated the penalty to half that amount, or $190,750.  *See* First Am. Compl.

Ex. 1 at 1.  In the penalty decision challenged herein, Customs lowered its determination of

manufacturer's suggested retail price from $190,750 to $67,775, assessed a penalty at twice that

amount, and then mitigated the penalty by 50 percent to arrive at a final administrative civil

penalty amount of $67,775.  *Id.* ¶ 6 & Ex. 1 at 1.

Plaintiff's first amended complaint alleges that the penalty notice and underlying penalty

determination by Customs are contrary to law in several respects.[1]  Plaintiff contends that,

contrary to the plain language of 19 U.S.C. § 1526(f)(2) and (3), no regulations were

promulgated under which Customs may determine a manufacturer's suggested retail price.  *Id*.

¶¶ 29, 44.  Plaintiff alleges that Customs did not properly determine a "manufacturer's suggested

retail price" for "genuine" merchandise because no such merchandise, and no such price, exist.

*Id*. ¶¶ 30, 43.  With respect to the travel chargers, plaintiff maintains that the Underwriters

Laboratories mark was prematurely applied by the vendor of the travel chargers but that

Underwriters Laboratories belatedly acknowledged its approval of the chargers within a few

weeks of the arrival of the goods in the United States.  *Id*. ¶¶ 35, 36.  The keyboards, according to

plaintiff, were not counterfeit because the display of the Microsoft Flying Window symbol on a

function key was a fair use of that symbol and a technical use reference for the convenience of

the keyboard user.  *Id*. ¶¶ 38, 39.  Further, the method Customs used to determine that both

classes of merchandise were counterfeit was, in plaintiff's view, contrary to "empirical

---

[1] Plaintiff amended its original complaint as a matter of course following the court's denial of plaintiff's motion to stay any agency action to enforce the civil penalty claim pending finality of the judicial review.  The court denied this motion due to plaintiff's failure to satisfy the requirements for preliminary injunctive relief, including, in particular, the requirements pertaining to likelihood of success on the merits and irreparable harm.  *Sakar Int'l, Inc. v. United States*, 30 CIT __, Slip Op. 06-24 (Feb. 22, 2006).

marketplace and method proof requirements, fair use notions, and related requisites for counterfeit goods legal determinations" as set forth in prior decisions of the Court of International Trade. *Id.* ¶ 42. Based on these allegations, plaintiff's first amended complaint seeks a judgment vacating the Customs penalty decision or, alternatively, a declaratory judgment holding that the Customs civil penalty determination is invalid as contrary to 19 U.S.C. § 1526(f)(3), is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and violates the Due Process Clause of the Fifth Amendment of the Constitution of the United States. *Id.* at 19.

Defendant moves to dismiss the first amended complaint under USCIT R. 12(b)(1) for lack of subject matter jurisdiction, or alternatively under USCIT R. 12(b)(5) for failure to state a claim on which relief can be granted. Def.'s Mot. to Dismiss Pl.'s Am. Compl. and Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss Pl.'s Compl. 3 ("Def.'s Second Mot. to Dismiss"). Defendant argues that 28 U.S.C. § 1581 (2000) does not grant the Court of International Trade jurisdiction over this action, that the issue is not ripe for judicial decision because the United States has not brought an action in any court to recover the civil penalty, and that the issuance of a civil penalty notice, absent an action to recover the penalty, does not constitute an injury in fact conferring on the plaintiff standing to sue. *Id.* at 11-12, 29-30, 36-38.

## II. DISCUSSION

This case presents two issues pertaining to subject matter jurisdiction. The first issue is whether plaintiff's first amended complaint, by itself or when considered with the proposed amendment, pleads facts sufficient to bring the case within 28 U.S.C. § 1581(a), under which the court has exclusive jurisdiction over cases contesting denials of administrative protests of

decisions by Customs. The second issue is whether plaintiff's case falls within 28 U.S.C. § 1581(i), which grants the Court of International Trade exclusive jurisdiction to hear cases against the United States arising under various laws of the United States that § 1581(i) describes by subject matter.

Plaintiff has the burden of pleading facts from which the court could conclude that it has jurisdiction over the subject matter of this action. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction"). For the reasons stated below, the court concludes that jurisdiction is lacking under 28 U.S.C. § 1581(a) but that the court may exercise jurisdiction over the subject matter of plaintiff's case pursuant to 28 U.S.C. § 1581(i).

<u>A. Jurisdiction Is Lacking under 28 U.S.C. §1581(a)</u>

The first amended complaint, even when read as modified by the proposed amendment, reveals that plaintiff's case does not satisfy the jurisdictional prerequisites of 28 U.S.C. § 1581(a). Under 28 U.S.C. § 1581(a), the Court of International Trade has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." Section 1515 provides for administrative review of protests filed pursuant to 19 U.S.C. § 1514. 19 U.S.C. § 1515 (2000). Once a party has filed with Customs a protest that satisfies the requirements of 19 U.S.C. § 1514, and Customs has acted on that protest, the party may contest a denial of the protest, in whole or in part, by timely filing a summons in the Court of International Trade. *See id.* §§ 1514(a), (c), 1515 (2000); 28 U.S.C. § 2636(a) (2000) (imposing a 180-day time limit on the commencement of a judicial action contesting the denial of a protest). The facts plaintiff has pleaded in its first amended complaint, and proposed

to plead in its amendment, do not establish the filing of a valid protest, a protest denial, and a timely contest of a protest denial, so as to satisfy the requirements of 19 U.S.C. § 1514 and 28 U.S.C. § 2636(a).

Plaintiff alleges that it protested the exclusion of its merchandise from entry, a decision by Customs that specifically is made protestable by 19 U.S.C. § 1514(a)(4).  However, plaintiff does not challenge in this litigation the exclusion of the merchandise from entry but instead challenges its liability for a civil fine stemming from the administrative proceeding in which Customs seized and forfeited, and subsequently destroyed, the merchandise.  Even were the court to construe plaintiff's claim as challenging the exclusion of the merchandise, the court would conclude that plaintiff has failed to plead facts establishing jurisdiction under 28 U.S.C. § 1581(a).  Plaintiff has failed to allege facts demonstrating compliance with the procedural requirements applicable to protests.

Plaintiff asserts jurisdiction under § 1581(a) on the basis of 19 U.S.C. § 1499, under which the failure by Customs to make a final determination on the admissibility of detained merchandise within thirty days of the presentation of that merchandise for examination is treated as a decision by Customs to exclude the merchandise for purposes of the filing of a protest. 19 U.S.C. § 1499(c)(5)(A) (2000).  A party may file a protest to challenge the deemed exclusion after the close of the thirtieth day.  *Id.*  If Customs does not act on such a protest within thirty days of the filing date of that protest, the protest is deemed denied on the thirtieth day.  *Id.* § 1499(c)(5)(B).

In its proposed amendment to the first amended complaint, plaintiff implies that it validly contested, under 19 U.S.C. § 1514(a)(4), the denial of its protests of the exclusion of its

merchandise.  Pl.'s Mot. for Leave to File Amendments to First Am. Compl. 1-2 ("contesting

defendant's denial of plaintiff's petition protests as to 'the exclusion of merchandise from entry

or delivery . . . under any provision of the customs laws . . .' under 19 U.S.C. § 1514(a)(4).")

("Pl.'s Mot. to Amend First Am. Compl.").  In the proposed amendment, Sakar asserts

jurisdiction "by virtue of the underlying 19 U.S.C. § 1514(a)(4) protest of CBP's deemed

exclusion of Plaintiff's goods within terms of § 1514(a)(4), and § 1515(c) Review of Protests,

said deemed exclusion having occurred, on information and belief, on or about November 8,

2002 (thirty (30) days following the presentation of the goods for customs examination on or

about October 7-or-8, 2002) . . . ."  *Id.* at 2-3.  In its response to defendant's motion to dismiss,

plaintiff characterizes its March 3, 2003 petition as constituting a valid protest that was "denied"

by a decision of Customs dated March 18, 2003.  *See* Pl.'s Resp. in Opp'n to Def.'s Mot. to

Dismiss 21 & Ex. 1 at 3-8 ("Pl.'s Resp. to Def.'s First Mot. to Dismiss").

          In the March 3, 2003 petition, plaintiff contests the administrative seizure and forfeiture

of its merchandise.  *See id.* Ex. 1 at 4-9.  A petition contesting a seizure and forfeiture, however,

usually does not qualify as an administrative protest of a decision by Customs to exclude

merchandise for purposes of 19 U.S.C. § 1514.  *See CDCOM (U.S.A.) Int'l, Inc. v. United States*,

21 CIT 435, 438-39, 963 F. Supp. 1214, 1218-19 (1997) (citing *Int'l Maven, Inc. v. McCauley*,

12 CIT 55, 57, 678 F. Supp. 300, 302 (1988) and *R.J.F. Fabrics, Inc. v. United States*, 10 CIT

735, 738, 651 F. Supp. 1431, 1433 (1986)); *see also* 19 U.S.C. § 1514(c)(1)(D) (requiring that a

protest include "any other matter required by the Secretary by regulation"); *compare* 19 C.F.R.

Part 171 (2002) (concerning Customs regulatory procedures for filing petitions for remission or

mitigation of fines, penalties, and forfeitures) *with* 19 C.F.R. Part 174 (2002) (concerning

Customs regulatory procedures for protests) *and* 19 C.F.R. § 174.13 (concerning the contents of a protest).  Nothing in the March 3, 2003 petition indicates that this submission was intended as a protest under 19 U.S.C. § 1514 or was intended to satisfy the requirements for protests established by the Customs regulations.  *See* Pl.'s Resp. to Def.'s First Mot. to Dismiss Ex. 1 at 3-8.  Moreover, after plaintiff declined to exercise its right to contest the forfeiture judicially, exclusion from entry arguably became moot upon the final administrative forfeiture and destruction of the merchandise.

Even if the court were to brush aside these difficulties and assume that the March 3, 2003 petition for relief could constitute a protest, the petition, because of untimeliness, could not constitute a timely protest on the facts that plaintiff has pleaded.  Plaintiff alleges a date "on or about November 8, 2002" as the date of the deemed exclusion, based on an examination date of October 7 or 8, 2002.  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 20 ("Pl.'s Resp. to Def.'s Second Mot. to Dismiss").  To be timely under 19 U.S.C. § 1514(c) as in effect at that time, any protest against the deemed exclusion would have had to have been filed no later than ninety days after the date of the decision being challenged.  19 U.S.C. § 1514(c)(3)(B).[2]  If the November 8, 2002 date of deemed exclusion is correct, plaintiff would have had to file a valid protest challenging the deemed exclusion by February 6, 2003, nearly a

---

[2] Congress amended 19 U.S.C. § 1514(c)(3) to lengthen the protest period to 180 days. Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, § 2103(2)(B), 118 Stat. 2434, 2597-98 (2004).  The amendment to § 1514(c)(3) applies to merchandise entered on or after December 18, 2004.  *Id.* § 2108.

month before the filing of plaintiff's first petition.[3]  *See* Pl.'s Resp. to Def.'s First Mot. to

Dismiss Ex. 1 at 3-8.  Moreover, although the Customs protest "denial" is alleged to have

occurred on March 18, 2003, the summons in this case was filed on January 25, 2006, long after

the 180-day period for the filing of a summons expired.  *See* 28 U.S.C. § 2636(a).  For these

several reasons, the court concludes that plaintiff has failed to plead facts sufficient for the

exercise of jurisdiction under 28 U.S.C. § 1581(a) based on 19 U.S.C. § 1499.

B.  Jurisdiction Is Lacking under 28 U.S.C. § 1581(i)(4) as it Relates to § 1581(a)

Plaintiff invokes jurisdiction under § 1581(i)(4) as it relates to protest denials under

§ 1581(a).  First Am. Compl. ¶ 4.  Under § 1581(i)(4), the Court of International Trade is granted

exclusive jurisdiction of any civil action against the United States that arises out of any law of the

United States providing for administration and enforcement with respect to the matters referred

to in the various other subsections of § 1581, including subsection (a).  In support of its argument

for jurisdiction under these provisions, plaintiff relies principally on *Vivitar Corp. v. United*

*States*, 761 F.2d 1552 (Fed. Cir. 1985), a case overturned on jurisdictional grounds by the

Supreme Court in *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182 (1988).

In *Vivitar*, the Court of Appeals for the Federal Circuit ("Court of Appeals") held that the

Court of International Trade properly had exercised jurisdiction under subsections (i)(3) and

(i)(4) of 28 U.S.C. § 1581 to hear a challenge to the regulations promulgated by the Department

---

[3] The amended complaint and attachments indicate that the other petitions cited by plaintiff as protests were filed after the March 3, 2003 petition.  Plaintiff filed a petition dated October 15, 2003 in response to the penalty notice issued by Customs in which Customs sought a penalty of $381,500.  First Am. Compl. Ex. 1 at 2.  Plaintiff filed a supplemental petition dated October 14, 2005 in response to the decision of Customs in which Customs mitigated the penalty by 50 percent to $190,750.  *Id.* Ex. 3.  Customs issued the final decision in response to the supplemental petition.  *Id.* Ex. 1 at 1.

of the Treasury interpreting Section 526(a).  761 F.2d at 1560.  Section 526(a) provides that merchandise of foreign manufacture bearing a registered and recorded trademark owned by a U.S. citizen, corporation, or association is prohibited generally from importation absent the written consent of the trademark owner.  *See* 19 U.S.C. § 1526(a).  The Court of Appeals concluded that the general import prohibition of Section 526(a) constituted an "embargo" within the meaning of 28 U.S.C. § 1581(i)(3).  *Vivitar*, 761 F.2d at 1560.  The Court of Appeals further held in *Vivitar* that the Court of International Trade had exclusive jurisdiction pursuant to 28 U.S.C. § 1581(i)(4), as a corollary to protest jurisdiction under § 1581(a).  *Id.*

The Supreme Court overturned the jurisdictional holding of *Vivitar* in *K Mart Corp.*, reasoning that the Court of International Trade did not have jurisdiction under 28 U.S.C. § 1581(i)(3) because Section 526(a) did not create an "embargo" within the meaning of the statute.  *See K Mart Corp.,* 485 U.S. at 183-84.[4]  Further, the Supreme Court rejected the "corollary to protest jurisdiction" reasoning, under which the Court of Appeals in *Vivitar* found jurisdiction to exist under 28 U.S.C. § 1581(a) when read together with § 1581(i)(4), because no actual protest was involved in the case.  *Id.* at 190-91.  Because plaintiff has not pleaded facts under which the court may conclude that this case involves a valid protest, the court rejects plaintiff's contention that the court may exercise jurisdiction under 28 U.S.C. § 1581(i)(4) as it relates to § 1581(a).

---

[4] The Supreme Court granted certiorari in *K Mart Corp.* to resolve a jurisdictional conflict among the Circuits arising from challenges to the implementation of the Treasury regulations interpreting Section 526(a).  In *Coalition to Preserve the Integrity of Am. Trademarks v. United States*, 790 F.2d 903 (D.C. Cir. 1986) and *Olympus Corp. v. United States*, 792 F.2d 315 (2d Cir. 1986), jurisdiction to challenge the Treasury regulations was held to lie in the district courts and not in the Court of International Trade.

C.  Jurisdiction Is Lacking under 28 U.S.C. § 1581(i)(4) as it Relates to § 1581(i)(1)

In its proposed amendment to the first amended complaint, plaintiff seeks to add text asserting jurisdiction under 28 U.S.C. § 1581(i)(1) and (i)(4).  Under § 1581(i)(1), the Court of International Trade is granted exclusive jurisdiction of any civil action commenced against the United States that arises out of any law of the United States providing for "revenue for imports or tonnage."  Plaintiff argues that subsection (i)(1), when construed in conjunction with subsection (i)(4), confers jurisdiction upon the court.  According to plaintiff, this case arises out of a law providing for "administration and enforcement with respect to matters in" § 1581(i)(1).  Pl.'s Mot. to Amend First Am. Compl. 1.  Plaintiff points to the Tariff Act of 1930, of which Section 526(f) is a part, as a law providing for revenue for imports.  Pl.'s Resp. to Def.'s Second Mot. to Dismiss 14.  On the facts pleaded, the court must consider this case to arise out of Section 526.  As an alternative, plaintiff characterizes Section 526(f)(3) as raising "some de facto revenue to the government."  Pl.'s Resp. to Def.'s First Mot. to Dismiss 13.  Section 526(f), which imposes civil fines associated with seizures of imported counterfeit merchandise, is not, in any ordinary sense, a law providing for revenue from imports.

D.  Subject Matter Jurisdiction Is Available under 28 U.S.C. § 1581(i)(4)

Plaintiff invokes jurisdiction under 28 U.S.C. § 1581(i)(3) and (4), under which the Court of International Trade has jurisdiction of any civil action against the United States that arises out of any law of the United States providing for "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety" or arises out of any law of the United States providing for "administration and enforcement with respect to the matters referred to" in, *inter alia*, § 1581(i)(3).  First Am. Compl. ¶¶ 2-3; *see*

28 U.S.C. § 1581(i)(3)-(4).  The court concludes that plaintiff has pleaded facts sufficient to bring its case within 28 U.S.C. § 1581(i)(4).

The threshold question is whether plaintiff's case arises out of subsection (e) of Section 526, which is a seizure and forfeiture provision applying to imported merchandise bearing counterfeit marks, or out of subsection (f), which is a related, but separate, provision subjecting to a civil fine any person who directs the importation of merchandise for sale or public distribution that is seized under Section 526(e).  Plaintiff appears to characterize its case as arising out of Section 526(e).  Plaintiff refers in its amended complaint to "the 19 U.S.C. 1526 Import Prohibition and seizure provisions as to violative goods" and describes these provisions as amounting "to an 'embargo' or 'other quantitative restriction' in terms of 28 U.S.C. 1581(i)(3) as an Import Prohibition of a class of violative goods that are subject to government exclusion from the Customs Territory."  First Am. Compl. ¶ 2.

Despite plaintiff's characterization, the court concludes that Sakar's civil action arises out of Section 526(f), not Section 526(e).  Because Section 526(e) is a seizure and forfeiture provision, not a civil penalty provision, an action that arises solely out of Section 526(e) would be an *in rem* seizure and forfeiture proceeding.  An action arising out of Section 526(f) is of a different character in that it necessarily entails an *in personam* civil penalty proceeding.  Plaintiff's case is *in personam* in character because it contests the liability of Sakar for a civil fine.  Any *in rem* cause of action on which Sakar ever could have sued in any court to contest the seizure and forfeiture of its goods was extinguished when the administrative forfeiture of its merchandise became "final," *i.e.*, no longer appealable.  The extinguishing event occurred when Sakar waived its right to request that the United States commence a judicial forfeiture proceeding

to adjudicate whether the United States could take title to the imported merchandise. The court concludes that plaintiff has not pleaded facts sufficient to state a case arising out of the seizure and forfeiture provision established in Section 526(e). It follows that jurisdiction over plaintiff's case does not lie solely under 28 U.S.C. § 1581(i)(3). The court's jurisdictional analysis, however, cannot end there.

The court is granted jurisdiction under 28 U.S.C. § 1581(i)(4) of cases against the United States that arise out of a law providing for "administration and enforcement" of the matters referred to in § 1581(i)(3), which matters would include an "embargo" within the meaning of the latter provision. Therefore, the court next considers whether § 1581(i)(4) would confer jurisdiction over plaintiff's case if Section 526(e) were deemed to provide for "embargoes or other quantitative restrictions" within the meaning of those terms as used in 28 U.S.C. § 1581(i)(3). As to this question, the parties disagree. Plaintiff argues that Section 526(e) imposes an embargo in banning counterfeit goods from entry into the Customs territory. Pl.'s Resp. to Def.'s Second Mot. to Dismiss 17. Defendant relies on the Supreme Court's holding in *K Mart Corp.* for the proposition that Section 526(e) does not create an "embargo" within the meaning of 28 U.S.C. § 1581(i)(3) and also argues that jurisdiction does not exist thereunder because the district courts, not the Court of International Trade, are granted jurisdiction to hear seizure and forfeiture cases. Def.'s Second Mot. to Dismiss 22-25 (citing *K Mart Corp.*, 485 U.S. at 184-85).

The court is not persuaded by defendant's argument that *K Mart Corp.* resolves the question of whether subsection (e) of Section 526 creates an embargo for purposes of 28 U.S.C. § 1581(i)(3). The Court of International Trade, in the somewhat different context of an importer

seeking to invoke § 1581(i)(3) jurisdiction for a challenge to a seizure effected under Section

526(e), previously has concluded that Section 526(e), in providing for the seizure of counterfeit

goods, does not create an embargo or other quantitative restriction for purposes of § 1581(i)(3).

*CDCOM (U.S.A.) Int'l, Inc.*, 21 CIT at 440, 963 F. Supp. at 1218-19.  Defendant cites to

*CDCOM (U.S.A.) Int'l, Inc.* in support of its motion to dismiss.  Def.'s Second Mot. to

Dismiss 24-25.  The narrow question of whether subsection (e) of Section 526 creates an

"embargo" within the meaning of that term as used in 28 U.S.C. § 1581(i)(3) is, however, one

that the Supreme Court did not have occasion to consider in *K Mart Corp.*, and on which the

Court of Appeals for the Federal Circuit has not ruled.  The Supreme Court's conclusion in

*K Mart Corp.* that the Customs regulations interpreting Section 526(a) could not be challenged in

the Court of International Trade under 28 U.S.C. § 1581(i)(3) rested on the Court's view that an

embargo did not result from subsection (a) of Section 526.  *See* 485 U.S. at 185-90.

Subsection (e) of Section 526 was not relevant to that analysis.

In *K Mart Corp.*, the Supreme Court concluded that "the ordinary meaning of 'embargo,'

and the meaning that Congress apparently adopted in the statutory language 'embargoes or other

quantitative restrictions,' is a governmentally imposed quantitative restriction–of zero–on the

importation of merchandise." *Id.* at 185 (quoting 28 U.S.C. § 1581(i)(3)).  "An importation

prohibition is not an embargo if rather than reflecting a *governmental* restriction on the quantity

of a particular product that will enter, it merely provides a mechanism by which a private party

might, at its own option, enlist the Government's aid in restricting the quantity of imports in

order to enforce a private right." *Id.*  Subsection (a) of Section 526, according to the Supreme

Court, relates to enforcement of a private right and is very different from an embargo because, in

addition to the trademark owner, any other importer having the owner's consent may import the good without limitation. *Id.* at 185-86.

Subsection (e) of Section 526 protects the rights of owners of genuine trademarks from importations of counterfeit goods, but the scope of the provision is much broader than that. It provides that any merchandise imported into the United States in violation of 15 U.S.C. § 1124 "shall be seized." 19 U.S.C. § 1526(e). Under 15 U.S.C. § 1124, a provision of the Lanham Act, no article of imported merchandise bearing a counterfeit trademark, as defined therein, "shall be admitted to entry at any customhouse of the United States." 15 U.S.C. § 1124. The provision incorporates only a limited exception for classes of articles, as identified by regulation under Section 526(d), that are imported by travelers for personal use. *Id.*; *see* 19 U.S.C. § 1526(d). Thus, Section 526(e) and the related provision of 15 U.S.C. § 1124 together establish a general prohibition on the importation of, and the exclusion from entry of, counterfeit merchandise, and both form the predicate for assessment of civil fines under Section 526(f). This statutory scheme does not permit the owner of a trademark to import counterfeits of its trademarked merchandise. Nor does it permit goods bearing a counterfeit trademark to be released into commerce, even with the consent of the owner of the genuine trademark. The trademark owner's consent has the effect under subsection (e) only of allowing, in the discretion of the Treasury Secretary, a limited exception to the required forfeiture and destruction of merchandise already seized: if the owner consents, and the counterfeit trademark is obliterated, the merchandise may be donated to a government agency or eleemosynary organization or, if no such agency has a need for the merchandise, sold by Customs at public auction. 19 U.S.C. § 1526(e).

The reason for the import restraint of subsection (e) of Section 526 differs from that of subsection (a). As the Supreme Court observed in *K Mart Corp.*, the subsection (a) import control does not reflect what the Supreme Court considered to be a "governmental" restriction but instead provides a mechanism by which a private party might, at its own option, enlist the government's aid in restricting the quantity of imports bearing the genuine trademark in order to enforce a private right. *See K Mart Corp.*, 485 U.S. at 185. Prohibiting the importation of goods bearing a counterfeit, as opposed to genuine, trademark not only serves the private interest of the trademark owner but also reflects the government's interest in the strict enforcement of intellectual property law to protect the U.S. economy and to protect the consuming public from the effects of a counterfeit good. *See* Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 2, 110 Stat. 1386, 1386 (1996) ("Anticounterfeiting Act"). For these reasons, the court concludes that the statutory scheme controlling the importation of counterfeit merchandise that is established by subsection (e) of Section 526 and the related provision of 15 U.S.C. § 1124 is sufficiently dissimilar to subsection (a) of Section 526 that the Supreme Court, in *K Mart Corp.*, cannot be considered to have decided the question of whether Section 526(e) and 15 U.S.C. § 1124 impose an "embargo" within the meaning of that term as used in 28 U.S.C. § 1581(i)(3).

The Supreme Court's discussion in *K Mart Corp.* is instructive in describing the widely-varying forms in which embargoes may be fashioned. "An embargo is a '[g]overnment order prohibiting commercial trade with individuals or businesses of other nations.'" 485 U.S. at 184 (quoting Black's Law Dictionary 468 (5th ed. 1979)). "It is '[a] policy which prevents goods from entering a nation' and which 'may be imposed on a product or on an individual country.'"

*Id*. (quoting J. Berenyi, The Modern American Business Dictionary 103 (1982)).  The Supreme

Court's opinion in *K Mart Corp.* noted that "embargoes" as referred to in 28 U.S.C. § 1581(i)(3)

are not confined to "embargoes that are grounded in trade policy" but typically serve a

governmental purpose in being directed to specific categories of goods, for example, public

health or safety, morality, law enforcement, foreign affairs, or ecology.  *Id*.  Section 526(e)

incorporates by reference, and enforces through seizure and forfeiture, the specific exclusion

from entry that the Lanham Act, in 15 U.S.C. § 1124, applies to imported merchandise bearing

counterfeit trademarks.  Together, the two statutory provisions establish an import control that

falls within the definitions of "embargo" on which the Supreme Court based its analysis of

Section 526(a) and 28 U.S.C. § 1581(i)(3).

The next question is whether the embargo established by Section 526 and 15 U.S.C.

§ 1124 falls within the broader terms of 28 U.S.C. § 1581(i)(3), which grants the Court of

International Trade jurisdiction over cases arising under a law providing for "embargoes . . . for

reasons *other than* the protection of the public health or safety."  28 U.S.C. § 1581(i)(3)

(emphasis added).  Subsection (e) was added to Section 526 by the Customs Procedural Reform

and Simplification Act of 1978, Pub. L. No. 95-410, § 211, 92 Stat. 888, 903-04 (1978).  The text

of the added subsection (e) demonstrated that Congress, in enacting import prohibitions on

merchandise bearing counterfeit marks, was aware that counterfeit merchandise could pose a risk

to public health and safety.  The added subsection (e) provided that "merchandise bearing a

counterfeit mark . . . shall be seized and, in the absence of the written consent of the trademark

owner, forfeited for violations of the customs laws." *Id.*[5] Subsection (e) allowed four

alternatives for the disposal of the goods seized. *Id.* The fourth alternative required disposal by

destruction "if the merchandise is unsafe or a hazard to health." *Id.*; *see* 19 U.S.C. § 1526(e)(4)

(1982).

Subsection (e) remained unchanged until Congress, in enacting the Anticounterfeiting Act

in 1996, amended the section to modify subsection (e) and to add subsection (f), the

aforementioned civil penalty provision. Anticounterfeiting Act, §§ 2, 9-10, 110 Stat. at 1386,

1388-89. Section 2 of the 1996 statute set forth as findings that

> [t]he counterfeiting of trademarked and copyrighted merchandise–
> (1) has been connected with organized crime;
> (2) deprives legitimate trademark and copyright owners of substantial revenues
> and consumer goodwill;
> (3) poses health and safety threats to United States consumers;

---

[5] Upon the amendment of Section 526 in 1978 to add subsection (e), subsection (e)
provided in relevant part:

> Any such merchandise bearing a counterfeit mark . . . shall be seized and, in the
> absence of the written consent of the trademark owner, forfeited for violations of
> the customs laws. Upon seizure of such merchandise, the Secretary shall notify
> the owner of the trademark, and shall, after forfeiture, obliterate the trademark
> where feasible and dispose of the goods seized –
> (1) by delivery to such Federal, State, and local government agencies as in the
> opinion of the Secretary have a need for such merchandise,
> (2) by gift to such eleemosynary institutions as in the opinion of the Secretary
> have a need for such merchandise,
> (3) more than 1 year after the date of forfeiture, by sale by appropriate customs
> officers at public auction under such regulations as the Secretary prescribes,
> except that before making any such sale the Secretary shall determine that no
> Federal, State, or local government agency or eleemosynary institution has
> established a need for such merchandise under paragraph (1) or (2), or
> *(4) if the merchandise is unsafe or a hazard to health, by destruction*.

Customs Procedural Reform and Simplification Act of 1978, § 211, 92 Stat. at 903-04 (emphasis
added).

(4) eliminates United States jobs; and

(5) is a multibillion-dollar drain on the United States economy.

*Id.* § 2, 110 Stat. at 1386.  Thus, Congress indicated in Section 2 that protection of the public

health and safety from risks associated with counterfeit merchandise was a matter of concern.

The 1996 amendments modified subsection (e) by integrating subsection (e)(4) into the main

portion of subsection (e), thereby requiring generally the destruction of merchandise bearing a

counterfeit trademark and allowing an exception to destruction only "if the merchandise is not

unsafe or a hazard to health." *Id.* § 9, 110 Stat. at 1388.[6]  Specifically, under subsection (e) as

amended, only if the merchandise was determined not to be unsafe and not a hazard to health

could the Secretary, upon obtaining the consent of the trademark owner, "obliterate the

trademark where feasible and dispose of the goods seized" via one of the three remaining

alternatives in subsection (e).  *Id.*; 19 U.S.C. § 1526(e).

---

[6] As amended in 1996, Section 526(e) provided in relevant part:

   Any such merchandise bearing a counterfeit mark . . . shall be seized and, in the
absence of the written consent of the trademark owner, forfeited for violations of
the customs laws.  Upon seizure of such merchandise, the Secretary shall notify
the owner of the trademark, and shall, after forfeiture, destroy the merchandise.
Alternatively, *if the merchandise is not unsafe or a hazard to health*, and the
Secretary has the consent of the trademark owner, the Secretary may obliterate the
trademark where feasible and dispose of the goods seized –
      (1) by delivery to such Federal, State, and local government agencies as in the
   opinion of the Secretary have a need for such merchandise,
      (2) by gift to such eleemosynary institutions as in the opinion of the Secretary
   have a need for such merchandise, or
      (3) more than 90 days after the date of forfeiture, by sale by the Customs
   Service at public auction under such regulations as the Secretary prescribes,
   except that before making any such sale the Secretary shall determine that no
   Federal, State, or local government agency or eleemosynary institution has
   established a need for such merchandise under paragraph (1) or (2).

*See* Anticounterfeiting Act, § 9, 110 Stat. at 1388 (emphasis added).

The enactment of the 1996 amendments to Section 526(e) demonstrates that protection of the public health and safety was among the reasons for maintaining and expanding the statutory regime directed against the importation of counterfeit merchandise. But it also demonstrates that Congress, in Section 526(e), was furthering not only private trademark rights but also governmental objectives that are distinct from the protection of public health and safety, including preserving jobs in the United States and preventing a multibillion-dollar drain on the United States economy.

Neither the plain meaning nor the legislative history of 28 U.S.C. § 1581(i)(3) indicates that Congress intended to exclude from the jurisdiction of the Court of International Trade cases arising out of a law providing for an embargo for which *any* reason relates to the public health or safety. To the contrary, the report of the House Committee on the Judiciary on the Customs Courts Act of 1980, in discussing the mark-up of the bill, H.R. 7540, that resulted in § 1581(i)(3) in its current form, explained that the draft jurisdictional provision as set forth in the previous version of the bill had generated concerns of witnesses, specifically the American Importers Association, that the Court of International Trade would exercise jurisdiction of civil actions under the Federal Food, Drug and Cosmetic Act and the Toxic Substances Control Act, that the public health or safety questions thereunder should be treated the same whether a court is dealing with domestic or imported goods, and that such public health or safety questions more appropriately should come within the jurisdiction of the district courts. H.R. Rep. No. 96-1235, at 47-48 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3759. The embargo created by Section 526(e) and the related 15 U.S.C. § 1124 bars importation and entry of counterfeit goods whether or not those goods pose a threat to public health or safety. That a good could pose a

threat to public health or safety related to congressional motivation for the enactment but was not a condition precedent to the exclusion from entry of any specific good.  The determination of whether a particular good falls within the embargo requires a court to determine whether the trademark borne by the good is counterfeit within the meaning of the Lanham Act, not whether the good itself poses a threat to the public health or safety.  Because questions of health or safety do not arise when a court determines the scope of this embargo, it is not the type of embargo that generated the concern of dual jurisdiction that was expressed in the House committee report.  For these several reasons, the court concludes that the embargo created by Section 526(e) in conjunction with 15 U.S.C. § 1124 satisfies the requirement of 28 U.S.C. § 1581(i)(3) that the law in question provide for "embargoes . . . for reasons other than the protection of the public health or safety."

The court disagrees with defendant's argument that plaintiff's case lacks jurisdiction under § 1581(i)(3) because Congress has placed jurisdiction over seizure and forfeiture cases in the district courts.  Under 28 U.S.C. § 1355, the district courts are granted jurisdiction generally over forfeiture actions; under 28 U.S.C. § 1356, the district courts possess jurisdiction of "any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."  28 U.S.C. §§ 1355, 1356 (2000).  Defendant's argument does not take into consideration that the case plaintiff has pleaded does not contest a seizure or a forfeiture effected under Section 526(e) but instead contests liability or potential liability for a civil fine under Section 526(f).

In summary, plaintiff has pleaded facts sufficient to demonstrate that its case arises out of a law, Section 526(f), that in providing for administration and enforcement of the import prohibition established by Section 526(e) and the exclusion from entry required by 15 U.S.C. § 1124, creates an embargo on the importation of counterfeit goods for reasons other than the protection of the public health or safety. The court therefore is granted jurisdiction over the general subject matter of plaintiff's case by 28 U.S.C. § 1581(i)(4).

### E.  Plaintiff Has Not Stated a Claim upon which Relief Can Be Granted

Defendant asserts various grounds in support of its argument that plaintiff has failed to establish jurisdiction or to state a claim on which relief can be granted. In addition to its arguments pertaining to the scope of 28 U.S.C. § 1581(i), defendant argues that plaintiff has failed to establish standing to sue and, submitting that no final agency action is available for review, that plaintiff's case lacks ripeness. *See* Def.'s Second Mot. to Dismiss 28-31, 36-38.

Under USCIT Rule 8(a)(2), the pleading requirement is satisfied by "a short and plain statement of the claim showing the pleader is entitled to relief." In ruling on a motion to dismiss, the court accepts as true the facts alleged in plaintiff's pleading and construes all inferences in the plaintiff's favor. *See Shearin v. United States*, 992 F.2d 1195, 1195-96 (Fed. Cir. 1993). The court may not dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff could prove no set of facts consistent with the plaintiff's allegations that would entitle the plaintiff to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Sakar's amended complaint and associated submissions, when evaluated under these standards, reveal that Sakar has failed to plead a cause of action under which it would be entitled to relief.

In addition to citing the jurisdictional provision of 28 U.S.C. § 1581(i), plaintiff's amended complaint cites, as the basis for its action, 28 U.S.C. §§ 2632(a), (b), and 2640(e). First Am. Compl. 1. Neither of these sections creates a cause of action. The provisions of § 2632 specify how a civil action is commenced in the Court of International Trade, *i.e.*, generally by the filing of a summons and complaint pursuant to subsection (a) or by the filing of a summons only in the instance of a civil action brought under 19 U.S.C. §§ 1515 or 1516 pursuant to subsection (b). 28 U.S.C. §§ 2632(a)-(b) (2000). The statute, in § 2640(e), defines the scope and standard of review for civil actions not specified in subsections (a) through (d) of that section and, therefore, directs how the Court of International Trade is to review a matter within the subject matter jurisdiction of § 1581(i). 28 U.S.C. § 2640(e) (2000). In so doing, § 2640(e) does not create a cause of action under which a plaintiff may challenge an agency decision but instead refers to the scope and standards of review applicable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2000). *Id.*

A case brought under the jurisdiction of 28 U.S.C. § 1581(i) may rely for its cause of action on the APA "right of review" provision, 5 U.S.C. § 702, which generally entitles any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . to judicial review thereof." 5 U.S.C. § 702 (2000); *see Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304-06 (Fed. Cir. 2004) (concluding that jurisdiction is proper under 28 U.S.C. § 1581(i)(4) and that an importer has a cause of action under 5 U.S.C. § 702 to challenge the liquidation of entries conducted pursuant to erroneous instructions of the Department of Commerce). Plaintiff's amended complaint does not ascribe Sakar's cause of action to the APA. Even had it done so, the amended complaint would

not suffice to state a valid claim under the APA, which limits agency review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704 (2000). The action taken by Customs in issuing under Section 526(f) the mitigated penalty decision of December 29, 2005 is not expressly made reviewable in a suit against the United States, either by Section 526(f) or by any other statute. To be reviewable under the APA, the agency action being challenged must be "final" such that it "must mark the consummation of the agency's decisionmaking process" and, in addition, "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted).

The December 29, 2005 letter states that "*this decision constitutes the final administrative review analysis available under the provisions of Part 171 of the Customs Regulations. No further petitions will be accepted.*" First Am. Compl. Ex. 1 at 1 (replying, in the Customs decision dated Dec. 29, 2005, to Sakar's supplemental petition for mitigation of the civil penalty). However, it does not necessarily follow that the December 29, 2005 decision marks the consummation of the agency's decision making process. Under Section 526(f), "[t]he imposition of a fine under this subsection shall be within the discretion of the Customs Service." 19 U.S.C. § 1526(f)(4). By statute, therefore, the United States could initiate no judicial action to recover a penalty unless Customs, in the discretion of the Customs Commissioner, first makes a decision to go forward with such an action, which it would do initially by means of a referral to the Department of Justice. *See* 19 C.F.R. § 171.22 (providing that where payment of a mitigated penalty is not made within the effective date of a mitigation decision, referral will be made to the Department of Justice unless other action has been directed by the Customs Commissioner).

Plaintiff's pleading does not indicate that this discretionary decision by Customs has been made; in any event, it cannot be said for certain whether, and on what alleged facts, the Department of Justice will bring an action in district court on behalf of Customs to recover from Sakar a civil fine under Section 526(f).  The Department of Justice may do so only by bringing an action in district court under 28 U.S.C. § 1355(a).  That statutory provision grants the district courts original jurisdiction of any action to recover or enforce a civil fine or penalty incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under 28 U.S.C. § 1582.  *See* 28 U.S.C. § 1355(a); 28 U.S.C. § 1582 (2000) (excluding Section 526(f) penalties from among those for which a collection action may be instituted in the Court of International Trade).

Accordingly, the facts and circumstances presented in plaintiff's submissions do not establish that the December 29, 2005 decision is the culmination of the Customs decision making process.  Even were the court to presume the decision to be such a culmination, plaintiff's case still would be deficient in stating an APA claim.  Plaintiff has failed to allege facts under which the court may conclude that the December 29, 2005 decision, after the close of the 30-day effective period of that decision, determined rights or obligations or gave rise to further legal consequences.  According to plaintiff's pleadings and documentation, the Customs administrative proceeding was based on findings of fact and conclusions of law made by Customs and culminated in the assessment of a mitigated civil penalty of $67,775.  First Am. Compl. ¶¶ 5-7.  Sakar did not pay the penalty within the 30 days allowed by Customs for acceptance of the mitigated penalty decision.  *See id.* ¶¶ 6-8, Ex. 1 at 1.  That decision, as a result, has expired and is now of no legal effect.  *See* 19 C.F.R. § 171.22 (providing that a

mitigated penalty decision is in effect for a limited time as specified in the decision and that the failure to pay within the effective period will result in the full penalty being deemed applicable and referral of the claim to the Department of Justice unless the Customs Commissioner determines otherwise).

An action brought by the United States to recover a penalty from Sakar under 28 U.S.C. § 1355(a) would be a *de novo* proceeding before the district court.  In granting to the district courts generally the original jurisdiction to hear civil penalty actions, Congress did not allow in 28 U.S.C. § 1355 for a proceeding under which the district court could review on the agency record a matter such as is described in plaintiff's pleading.  *See* 28 U.S.C. § 1355; *Griekspoor v. United States*, 433 F. Supp. 794, 799 (M.D. Fla. 1977) (observing in *dicta* that had the government sought to collect a civil penalty under 28 U.S.C. § 1355, "a full dress hearing and trial would have taken place . . . in the District Court.").  For these reasons, the findings of fact and conclusions of law that Customs made during the administrative proceeding are no longer of any binding legal effect.

Despite the expired status of the December 29, 2005 decision, the prayer for relief in plaintiff's first amended complaint seeks "a judgment reversing, setting aside, and vacating the agency's December 29, 2005 2X MSRP Civil Penalty Decision determination . . . ."  First Am. Compl. 19.  Sakar seeks, in the alternative, a declaratory judgment holding that the civil penalty decision is invalid as contrary to Section 526(f)(3), arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and a denial of due process.  *Id.*  Sakar essentially asks the Court of International Trade to grant a declaratory judgment on facts, which Sakar has pleaded, that pertain solely to the now-concluded administrative proceeding.  In summary,

because that proceeding was concluded without a penalty being paid, and because the United

States has not asserted any penalty claim under 28 U.S.C. § 1355(a), Sakar has failed to allege

facts under which the court could find that the Customs decision now has any effect on Sakar's

rights or obligations.

Nor has Sakar alleged any facts pertaining to the December 29, 2005 decision under

which that decision has resulted in further legal consequences sufficient to justify APA review.

In responding to the motion to dismiss, plaintiff directs the court's attention to a July 23, 2004

letter in which Customs notified Sakar that it had received no response to a notice of penalty of

$259,000, dated May 24, 2004, that Customs had sent to Sakar.  *See* Pl.'s Resp. to Def.'s First

Mot. to Dismiss 27 & Ex. 3.  The letter stated that if no response was received within thirty days,

"th[e] case will be referred to the Department of Justice for collection action and the Internal

Revenue Service where a lien will be placed against your income tax return." *Id.* Ex. 3 at 1.

Plaintiff includes with its first amended complaint an affidavit of its Chief Operating Officer

referring to the July 23, 2004 letter from Customs and stating that Sakar would be irreparably

injured in the event of a collection action and income tax lien.  *Id.* Ex. 5 at 2.

The threat of a collection action and tax lien, as was stated in the July 23, 2004 letter and

characterized in the affidavit of Sakar's Chief Operating Officer, does not suffice as an allegation

that the December 29, 2005 decision has occasioned legal consequences for Sakar.  That letter,

according to the May 24, 2004 penalty notice in the amount of $259,000, pertains to Customs

penalty case no. 2004-4601-300365-01, which is a different penalty case than the penalty case

that is the subject of this action.  *See id.* Ex. 3 at 2-3.  The penalty case at issue in this action,

according to the documentation plaintiff provides, is Customs penalty case no. 2003-4601-

300404-01.  First Am. Compl. Ex. 1 at 1-2.  Plaintiff's submissions do not allege facts or cite to documentation establishing that the United States has imposed, or threatened to impose, a tax lien in the penalty proceeding that forms the basis of plaintiff's claim.

For the foregoing reasons, plaintiff has pleaded no cause of action that could entitle it to relief under the APA.  In the absence of a valid APA cause of action, and in the absence of another statute under which the Customs decision of December 29, 2005 is made reviewable, plaintiff's case may proceed beyond the pleadings stage if it alleges facts allowing the court to conclude that Sakar has an available remedy under a "nonstatutory," *i.e.*, constitutional, cause of action.  *See Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1359 (2006).  Plaintiff's pleadings attempt to assert such a claim in alleging that the Customs decision was "unconstitutional as a Denial of Due Process of Law."  First Am. Compl. 2.  The court concludes that this is not a statement of a claim upon which relief can be granted.  The December 29, 2005 penalty decision imposed a mitigated penalty of $67,775 but did not state any consequence that would attend the failure of Sakar to pay the mitigated penalty within the 30-day period in which the decision was in effect.  *Id.* Ex. 1 at 1.  Nor did the decision initiate any further proceeding.  As discussed previously, the facts alleged reveal that the seizure and forfeiture of Sakar's merchandise are now final and beyond the jurisdiction of any court to review.  The only alleged fact to which plaintiff has directed the court that conceivably could relate to a due process claim involves a threat of a tax lien in an entirely different penalty proceeding.  *See* Pl.'s Resp. to Def.'s First Mot. to Dismiss Ex. 3 at 1-2.

F.  Plaintiff's Proposed Amendment Fails to Cure the Insufficient Complaint

Finally, the court addresses the remaining issue involving plaintiff's motion to amend its first amended complaint and concludes that the proposed amended complaint does not cure the insufficient pleading of a claim on which relief can be granted.  *See* Pl.'s Mot. to Amend First Am. Compl.  The court previously discussed this proposed amendment in the context of subject matter jurisdiction.  Although, as provided by USCIT R. 15(a), leave to amend a pleading is to be "freely given when justice so requires," a court may deny a motion to amend a pleading when doing so would be futile.  *See United States v. Ford Motor Co.*, 463 F.3d 1286, 1296-98 (Fed. Cir. 2006).  In this instance, no purpose would be served by the court's granting plaintiff's motion to amend its complaint.

In the proposed amendment, plaintiff seeks to allege additional facts pertaining to a denial of a protest as the predicate on which plaintiff would have the court exercise jurisdiction under 28 U.S.C. § 1581(a).  Pl.'s Mot. to Amend First Am. Compl. 1-2.  Under 19 U.S.C. §§ 1514 and 1515, a plaintiff is expressly given the right to challenge judicially the denial of a protest of any of the specified categories of decisions of Customs.  It is, therefore, theoretically possible that a validly pleaded cause of action would have resulted had plaintiff pleaded facts allowing the court to find a valid protest, a denial thereof, and the timely filing of a summons to contest that denial.  As discussed previously, the facts as alleged in the first amended complaint, even as augmented by the proposed amendment, are insufficient to establish a basis for jurisdiction under 28 U.S.C. § 1581(a).  Plaintiff fails to allege the filing of any document that could constitute a valid protest, and plaintiff did not file a timely summons to challenge what plaintiff alleges was a protest

denial.  The proposed amendment, accordingly, fails to cure plaintiff's failure to plead a claim entitling it to relief.

### III. CONCLUSION

Plaintiff's first amended complaint, whether considered alone or in conjunction with its proposed amendment thereto, fails to state a claim on which the court could grant relief.  Plaintiff has asserted no valid cause of action under the APA or any other statute.  There is no set of facts that plaintiff could prove that would entitle it to relief consistent with the constitutional due process claim that plaintiff has stated in its pleadings.  Plaintiff's motion to amend its first amended complaint does not allege facts sufficient to cure the defective pleading and therefore is futile.  Judgment granting defendant's motion to dismiss and denying for futility plaintiff's motion to amend the complaint will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: December 12, 2006
        New York, New York