# United States Court of Appeals for the Federal Circuit

2007-1173

SAKAR INTERNATIONAL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

James C. Tuttle, Tuttle Law Offices, of New York, New York, argued for plaintiff-appellant.

Domenique Kirchner, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief was Jeanne E. Davidson, Director.

Appealed from: United States Court of International Trade

Judge Timothy C. Stanceu

# United States Court of Appeals for the Federal Circuit

2007-1173


SAKAR INTERNATIONAL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Appeal from the United States Court of International Trade in case no. 06-00025, Judge Timothy C. Stanceu.

_____

DECIDED: February 19, 2008

_____


Before LOURIE, SCHALL, and GAJARSA, Circuit Judges.

SCHALL, Circuit Judge.


Sakar International, Inc. ("Sakar") brought suit against the United States ("the government") in the United States Court of International Trade to challenge an administrative decision of the Bureau of Customs and Border Protection, United States Department of Homeland Security ("Customs"), assessing Sakar a civil fine of $67,775 for the importation by Sakar of merchandise that Customs determined was counterfeit. After concluding that it had jurisdiction over Sakar's suit pursuant to 28 U.S.C. § 1581(i)(4) as it relates to 28 U.S.C. § 1581(i)(3), the Court of International Trade ruled

that Customs' assessment of the civil fine did not constitute final agency action for purposes of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704 (2000). The court therefore held that Sakar had failed to state a claim upon which relief could be granted and granted the government's motion to dismiss Sakar's complaint pursuant to USCIT Rule 12(b)(5). Sakar Int'l, Inc. v. United States, 466 F. Supp. 2d 1333, 1351 (Ct. Int'l Trade 2006).

Because we conclude that section 1581(i)(4) as it relates to section 1581(i)(3) did not provide the Court of International Trade with jurisdiction over Sakar's suit, and because we conclude that none of the other statutory provisions cited by Sakar supported jurisdiction, we vacate the decision of the Court of International Trade and remand the case to the court with the instruction that it dismiss Sakar's complaint for lack of jurisdiction.

BACKGROUND

I.

On October 7, 2002, Sakar presented for importation into the United States 500 travel chargers for personal digital assistants ("PDAs") and 2,311 mini-keyboards for PDAs, all of which were products of the People's Republic of China. Upon examination, Customs determined that the goods were "counterfeit" in that they made unauthorized use of two registered United States trademarks. Specifically, the travel chargers bore the "UL" trademark registered to Underwriters Laboratories, whereas the mini-keyboards displayed the "Flying Window" trademark of Microsoft Corporation. Customs seized the goods on December 18, 2002, pursuant to its statutory authority under Section 526(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1526(e) (2000).

Section 1526(e) provides in relevant part that any "merchandise bearing a counterfeit mark . . . imported into the United States . . . shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws." In a letter dated December 30, 2002, Customs notified Sakar of the seizure, and informed Sakar that the goods would be forfeited—and disposed of in accordance with 19 C.F.R. § 133.52[1]—unless, within 30 days, the trademark owners consented in writing to the importation of the goods. Consent was not received; consequently, on August 28, 2003, Customs destroyed the goods.

Subsequently, Customs exercised its discretion under 19 U.S.C. § 1526(f) to impose a civil fine upon Sakar.[2] Customs set the amount of the fine at $381,500, which was twice the amount that Customs determined to be the manufacturer's suggested retail price ("MSRP") of the goods.[3] In response to a petition filed by Sakar, Customs mitigated the fine by 50% to $190,750. Eventually, in a letter dated December 29,

---

[1] Section 133.52(c) requires the destruction of all forfeited merchandise unless two requirements are satisfied. First, a determination must be made that the merchandise is "not unsafe or a hazard to health." Second, the trademark owner must consent in writing to the merchandise's non-destruction. If both requirements are met, instead of destroying the merchandise, Customs may "dispose of the merchandise, after obliteration of the trademark" by either (1) delivery to any federal, state, or local government that has demonstrated a need for the merchandise; (2) gift to any charitable institution that has demonstrated a need for the merchandise; or (3) sale at public auction in certain cases. 19 C.F.R. § 133.52(c) (2007); see also 19 U.S.C. § 1526(e).

[2] Section 1526(f)(1) provides that "[a]ny person who directs, assists financially or otherwise, or aids and abets the importation of merchandise for sale or public distribution that is seized under [19 U.S.C. § 1526(e)] shall be subject to a civil fine." Under section 1526(f)(4), the imposition of any such fine is "within the discretion of the Customs Service."

[3] Customs determined that Sakar had been subject to two prior seizures under section 1526(e). Thus, Customs set the amount of Sakar's fine at twice the MSRP of the imported goods. See 19 U.S.C. § 1526(f)(3) ("For the second seizure and thereafter, the fine shall be not more than twice the value that the merchandise would have had if it were genuine . . . .").

2005, Customs adjusted the MSRP it had initially used to calculate the fine. This recalculation resulted in a further reduction of the fine to $67,775. In the December 29th letter, Customs stated that the letter constituted the "final administrative review" available to Sakar and that Customs would accept "[n]o further petitions."

## II.

Following Customs' action, Sakar filed suit in the Court of International Trade. Sakar's first amended complaint ("complaint") challenged Customs' mitigated fine by alleging, among other things, that Customs had acted contrary to law in calculating the MSRP of the seized goods and in concluding that the goods were counterfeit. Sakar, 466 F. Supp. 2d at 1336-37. Customs eventually moved to dismiss the complaint under USCIT Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, under USCIT Rule 12(b)(5) for failure to state a claim on which relief could be granted. Id.

Sakar's complaint purported to base the Court of International Trade's jurisdiction on several different provisions of 28 U.S.C. § 1581. The court declined to exercise jurisdiction under all but one of those provisions, concluding that jurisdiction was proper only under section 1581(i)(4) as it relates to section 1581(i)(3). Id. at 1337-46. Section 1581(i) provides in pertinent part as follows:

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> . . .
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection . . . .

The court concluded that Customs' seizure of Sakar's goods amounted to an "embargo" within the meaning of section 1581(i)(3) and that the fine issued by Customs thus related to the "administration and enforcement" of an embargo within the meaning of section 1581(i)(4). Id. at 1341-46. Based upon that conclusion, the court held that it had jurisdiction over Sakar's claim under section 1581(i)(4) as it relates to section 1581(i)(3). Id.

Next, the Court of International Trade considered whether, under USCIT Rule 12(b)(5), Sakar's first amended complaint stated a claim upon which relief could be granted. The court first explained that none of the statutory provisions actually cited by Sakar created a cause of action. Id. at 1347. Consequently, the court reasoned that, if Sakar was entitled to bring any claim at all, the claim had to be premised upon the APA's "right of review" provision, 5 U.S.C. § 702. Section 702 generally entitles any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . to judicial review thereof." Id. However, in the court's view, even if Sakar's first amended complaint had ascribed its cause of action to the APA—which it did not—Sakar would have been unable to satisfy the APA's requirement of a "final agency action" under 5 U.S.C. § 704.[4] Sakar, 466 F. Supp. 2d at 1347. According to the court, that was because the action taken by Customs was neither the "consummation of the agency's

---

[4] Section 704 provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." When review is sought not pursuant to specific statutory authorization, but only under the general review provisions of the APA, the "agency action" referred to in section 702 must be "final agency action" within the meaning of section 704. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 61-62 (2004); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990).

decision-making process" nor "one by which rights or obligations have been determined, or from which legal consequences will flow."  Id. at 1347-48 (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)).

The court explained that, although the December 29, 2005 letter stated it was the "final administrative review" available to Sakar, the letter did not actually represent the "consummation of the agency's decision-making process" because Customs retained discretion over the ultimate decision of whether or not to sue Sakar in a district court in order to collect the fine.  Id. at 1348.  Further, the court reasoned, the letter did not determine any legal rights or obligations because the letter expired according to its own terms when Sakar failed to pay the fine within 30 days.  Id. at 1347.  By the time Sakar initiated its suit in the Court of International Trade, the mitigated fine set forth in the letter no longer had any legal effect.  Id.  According to the court, any subsequent suit by Customs to collect the fine would be a de novo proceeding in federal district court.  Id. at 1347-48.  Thus, the court determined that "the findings of fact and conclusions of law Customs made during the administrative proceeding are no longer of any binding legal effect."  Id. at 1348.

Because the action taken by Customs was not "final agency action," the court held that Sakar had failed to plead a cause of action that could entitle it to relief under the APA.  Id. at 1350.  Moreover, the court found that Sakar had not alleged a non-statutory (i.e., constitutional) cause of action despite Sakar's purported "due process" claim.  Id.  Therefore, the court granted the government's motion to dismiss Sakar's first amended complaint under USCIT Rule 12(b)(5).  Id. at 1351.

DISCUSSION

We have jurisdiction over Sakar's appeal pursuant to 28 U.S.C. § 1295(a)(5). On appeal, Sakar argues that the Court of International Trade erred in dismissing its complaint for failure to state a claim upon which relief could be granted. Sakar contends that the administrative fine set forth in Customs' December 29, 2005 letter was sufficiently final for judicial review by the Court of International Trade. With respect to the merits of the case, Sakar asserts that Customs acted contrary to the law in calculating the MSRP of the seized goods. The government responds that the Court of International Trade erred in ruling that it had jurisdiction over Sakar's suit. At the same time, the government argues that, assuming it had jurisdiction, the Court of International Trade did not err in dismissing Sakar's complaint under USCIT Rule 12(b)(5). For the reasons set forth below, we hold that the Court of International Trade erred in ruling that it had jurisdiction over Sakar's suit. We therefore vacate the court's decision and remand the case to the court with the instruction that it dismiss Sakar's complaint for lack of jurisdiction.

I.

Whether the Court of International Trade had subject matter jurisdiction over Sakar's suit is a question of law that we review de novo. Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324, 1326 (Fed. Cir. 2006) (citing Xerox Corp. v. United States, 289 F.3d 792, 793-94 (Fed. Cir. 2002)). As stated above, the court held that it had jurisdiction over Sakar's claim under 28 U.S.C. § 1581(i)(4) as it relates to 28 U.S.C. § 1581(i)(3) because Customs' seizure of Sakar's goods amounted to an "embargo" within the meaning of section 1581(i)(3) and, thus, the fine assessed against

Sakar by Customs related to the "administration and enforcement" of an embargo within the meaning of section 1581(i)(4). Sakar, 466 F. Supp. 2d at 1346.

However, the government, relying upon K Mart Corp. v. Cartier, Inc., 485 U.S. 176 (1988), argues that the seizure of Sakar's goods did not constitute an embargo. Hence, the government urges that the Court of International Trade erred when it held that it had jurisdiction over Sakar's claim.

In K Mart, the Supreme Court considered whether 19 U.S.C. § 1526(a), which makes it unlawful to import into the United States goods bearing a registered U.S. trademark without the trademark owner's written consent, creates an "embargo" within the meaning of 28 U.S.C. § 1581(i)(3). The Court concluded that the word "embargo" should be interpreted according to its ordinary meaning, which is "a governmentally imposed restriction—of zero—on the importation of merchandise." Id. at 185. The Court explained that "[a]n importation prohibition is not an embargo if rather than reflecting a governmental restriction on the quantity of a particular product that will enter, it merely provides a mechanism by which a private party might, at its own option, enlist the Government's aid in restricting the quantity of imports in order to enforce a private right." Id. (emphasis in original). According to the Court, section 1526(a) creates an importation prohibition of the latter type. Id. The Court reasoned that section 1526(a) is "very different from an embargo" because "[t]he trademark owner has the sole authority to decide that all products bearing its trademark will enter or that none will, and to decide what entity may import them, under what conditions, and for what purpose." Id. at 185-87.

The government argues that the Supreme Court's holding in K Mart with respect to 19 U.S.C. § 1526(a) applies with equal force to 19 U.S.C. § 1526(e), the statutory provision under which the government acted in this case. That is, the government contends that a seizure of goods under section 1526(e) does not constitute an "embargo" because it is not a governmentally imposed quantitative restriction on the importation of merchandise. Thus, a civil fine issued by Customs under section 1526(f) does not relate to the "administration and enforcement" of an embargo. For these reasons, the government contends that the Court of International Trade did not have jurisdiction over Sakar's claim under section 1581(i)(4) as it relates to section 1581(i)(3).

In response, Sakar argues that the Court of International Trade correctly determined that it had jurisdiction. Specifically, Sakar distinguishes K Mart by urging that section 1526(e), unlike section 1526(a), constitutes a complete ban on the importation of counterfeit goods. According to Sakar, the governmentally imposed restrictions of section 1526(e) establish an "embargo" under section 1581(i)(3), and, therefore, the fine issued by Customs to Sakar relates to the "administration and enforcement" of an embargo under 28 U.S.C. § 1581(i)(4). Thus, Sakar contends that section 1581(i)(4) as it relates to section 1581(i)(3) provided the Court of International Trade with jurisdiction over Sakar's claim.

II.

Section 1581(i)(3) grants the Court of International Trade exclusive jurisdiction over cases against the United States that arise out of any law providing for "embargoes or other quantitative restrictions on the importation of merchandise . . . ." Section 1581(i)(4), in turn, grants the Court of International Trade jurisdiction over cases arising

out of any law that provides for "administration and enforcement with respect to the matters referred to in" section 1581(i)(3). Thus, section 1581(i)(4) as it relates to section 1581(i)(3) provides the Court of International Trade with jurisdiction over cases that arise out of any law providing for the administration and enforcement of an embargo.

The critical question in this case is whether 19 U.S.C. § 1526(e) establishes an "embargo." Section 1526(e) provides, in relevant part:

> Any such merchandise bearing a counterfeit mark (within the meaning of section 1127 of Title 15) imported into the United States in violation of the provisions of section 1124 of Title 15, shall be seized and, in the absence of the written consent of the trademark owner, forfeited for violations of the customs laws.

By its terms, section 1526(e) incorporates provisions of the Lanham Act in order to identify which imported merchandise Customs shall seize. Specifically, under 15 U.S.C. § 1124, no imported merchandise found to "copy or simulate"[5] a registered trademark "shall be admitted to entry at any customhouse of the United States."[6]

---

[5] A "copying or simulating" mark is "one which may so resemble a recorded mark . . . as to be likely to cause the public to associate the copying or simulating mark . . . with the recorded mark." 19 C.F.R. § 133.22(a). However, a counterfeit mark is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (2000); 19 C.F.R. § 133.21(a). Merchandise bearing a "counterfeit mark" is thus a subset of merchandise that merely "copies or simulates" a registered mark. See Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 527-28 (2d Cir. 1983) ("Thus the customs laws and regulations create a two-tier classification scheme. The first category consists of marks which are merely infringements, judged by whether they are likely to cause the public to associate the copying mark with the recorded mark. In the second category are those marks which not only infringe but in addition are such close copies that they amount to counterfeits."); United States v. 10,510 Packaged Computer Towers, More or Less, 152 F. Supp. 2d 1189, 1200 (N.D. Cal. 2001); Ross Cosmetics Distrib. Ctrs., Inc. v. United States, 18 C.I.T. 979, 984-85 (1994). Therefore, the provisions of sections 1526(e) and 1124, read together, relate only to marks that are "counterfeit."

[6] Limited, non-relevant exceptions are provided in 19 U.S.C. § 1526(d).

Examining these provisions, the Court of International Trade determined that the import restrictions imposed by sections 1526(e) and 1124 together were "sufficiently dissimilar" to those imposed by section 1526(a) that the Supreme Court's K Mart decision was not controlling. Sakar, 466 F. Supp. 2d at 1343. In K Mart, the Supreme Court determined that section 1526(a) did not create an embargo because "[t]he private party, not the Government, by deciding whether and how to exercise its private right, determines the quantity of any particular product that can be imported." 485 U.S. at 185. Because section 1526(a) does not create a governmentally imposed import restriction, it does not fall within the plain meaning of "embargo." Id. Here, the Court of International Trade concluded that section 1526(e) differs from section 1526(a) in that it establishes a governmentally imposed prohibition on the importation of counterfeit merchandise. Sakar, 466 F. Supp. 2d at 1343. Central to that conclusion was the court's belief that the trademark owner, as a private party, does not control whether or not counterfeit merchandise is seized by Customs under section 1526(e). The court reasoned that section 1526(e) "does not permit the owner of a trademark to import counterfeits of its trademarked merchandise. Nor does it permit goods bearing a counterfeit trademark to be released into commerce, even with the consent of the owner of the genuine trademark." Id. In short, the Court of International Trade determined that section 1526(e) is a "governmentally imposed quantitative restriction—of zero—on the importation of merchandise." In the court's view, under section 1526(e), the government alone, not the private party, determines the quantity of any particular product that can be imported. Accordingly, the court held that section 1526(e) falls within the plain meaning of "embargo" as set forth in K Mart.

We do not agree with the Court of International Trade's interpretation of section 1526(e).  Section 1526(e) does not constitute a governmentally imposed quantitative limit on importation, because under that provision the trademark owner, not the government, retains ultimate control over whether or not the "counterfeit" merchandise is imported.  In that regard, section 1526(e), like section 1526(a), "merely provides a mechanism by which a private party might, at its own option, enlist the Government's aid in restricting the quantity of imports in order to enforce a private right," K Mart, 485 U.S. at 185, and, thus, does not create an "embargo" within the meaning of section 1581(i)(3).

Section 1526(e) sets forth a two step process.  First, any counterfeit merchandise imported in violation of 15 U.S.C. § 1124 "shall be seized" by Customs.  19 U.S.C. § 1526(e).  Only in the absence of written consent from the trademark owner, however, is the merchandise ultimately forfeited.  Id.  Customs regulations set forth the specific procedures to be followed once goods are seized.  Upon seizure of counterfeit merchandise, Customs must promptly notify the trademark owner.  19 C.F.R. § 133.21(c).  The seized merchandise is subsequently forfeited "[u]nless the trademark owner, within 30 days of notification, provides written consent to importation of the articles, exportation, entry after obliteration of the trademark, or other appropriate disposition . . . ."  Id. § 133.21(e).  Importantly, under this regime, it is the trademark owner that ultimately controls the disposition of the merchandise.  At any time within 30 days of notification, the trademark owner may consent to the importation of the seized merchandise.  We therefore think that the Court of International Trade erred in concluding that section 1526(e) "[does not] permit goods bearing a counterfeit

trademark to be released into commerce, even with the consent of the owner of the genuine trademark." <u>Sakar</u>, 466 F. Supp. 2d at 1343. To the contrary, the import prohibition created by section 1526(e) falls squarely within the holding of <u>K Mart</u>. Under section 1526(e), "[t]he private party, not the Government, by deciding whether and how to exercise its private right, determines the quantity of any particular product that can be imported." <u>K Mart</u>, 485 U.S. at 185. Thus, section 1526(e) does not impose an "embargo" within the meaning of that term as used by Congress in section 1581(i)(3) and interpreted by the Supreme Court in <u>K Mart</u>.

The Court of International Trade, in finding that trademark owners lack the ability to consent to the importation of "counterfeit" merchandise, apparently focused on the mandatory language of sections 1526(e) and 1124. <u>Sakar</u>, 466 F. Supp. 2d at 1343. Specifically, section 1526(e) provides that counterfeit merchandise imported in violation of section 1124 "shall be seized." At the same time, section 1124 states that no article of imported merchandise that copies or simulates a registered trademark "shall be admitted to entry at any customhouse of the United States." Even assuming, however, that the statutory regime does not allow trademark owners to prevent the initial seizure of such merchandise,[7] the fact remains that the seizure of imported merchandise

---

[7] Both the text and context of section 1526(e) suggest that the trademark owner does, in fact, have control over whether Customs seizes the merchandise. Section 1526(e) states that "[a]ny such merchandise" bearing a counterfeit trademark shall be seized. The use of "such" apparently refers back to the introduction of the term "merchandise" in section 1526(a), which makes it unlawful to import "any merchandise" bearing a registered trademark where (1) the trademark owner files a copy of the certificate of registration with the Secretary of the Treasury and (2) the trademark owner does not consent in writing to the importation. Thus, trademark owners play a significant role in determining whether Customs may seize merchandise under section 1526(e). If, for example, the trademark owner files written consent to an importation of goods bearing its trademark, that importation would not be "unlawful"

cannot, by itself, constitute an "embargo." That is, by simply seizing certain goods, Customs does not impose a "quantitative restriction . . . on the importation of merchandise." K Mart, 485 U.S. at 185. As explained above, seized goods may subsequently be released for importation if the trademark owner consents within 30 days of notification. A seizure of merchandise by Customs under section 1526(e) is merely an intermediate step in the ultimate disposition of that merchandise. Therefore, to the extent that a seizure under section 1526(e) may be viewed as being solely within the government's control, the seizure alone cannot constitute an "embargo." In sum, the Court of International Trade erred in holding that it had jurisdiction over Sakar's suit pursuant to 28 U.S.C. § 1581(i)(4) as it relates to 28 U.S.C. § 1581(i)(3).

III.

Sakar also argues that the Court of International Trade erred in rejecting one of its alternate grounds for jurisdiction. Sakar argued that jurisdiction in the Court of International Trade was proper under 28 U.S.C. § 1581(i)(4) as it relates to 28 U.S.C. § 1581(i)(1) because the fine issued by Customs arose out of a law providing for "administration and enforcement" with respect to "revenue from imports."[8] In making

---

under section 1526(a), and, thus, Customs would not be authorized to seize the goods under section 1526(e).

[8] Section 1581(i) provides, in relevant part:

[T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

. . .

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection . . . .

this argument, Sakar pointed to 19 U.S.C. § 1526(f), the civil penalty provision, as a law providing for "administration and enforcement" with respect to "revenue from imports." The Court of International Trade rejected this argument on the ground that "[s]ection [1]526(f), which imposes civil fines associated with seizures of imported counterfeit merchandise, is not, in any ordinary sense, a law providing for revenue from imports." Sakar, 466 F. Supp. 2d at 1341. We too reject Sakar's argument. We agree with the Court of International Trade that section 1526(f) is not "in any ordinary sense" a law providing for revenue from imports. Nor does it relate to "administration and enforcement" of a law providing for revenue from imports. Section 1526(f) is punitive in nature; it authorizes Customs to issue "[c]ivil penalties" to those who import, or assist the importation of, counterfeit merchandise. Legislative history indicates that the Congressional purpose behind section 1526(f) was to strengthen the private rights of trademark owners, not to provide the government with an additional source of revenue. See S. Rep. No 104-177, at 2 (1995) ("[T]he bill strengthens the hand of businesses harmed by counterfeiters by updating existing statutes and providing stronger civil penalties against counterfeiters . . . ."); H.R. Rep. No 104-556, at 1-2 (1995) ("The purpose of H.R. 2511 is to prevent counterfeiting of copyrighted and trademarked goods and services and to ensure that counterfeit goods produced elsewhere cannot enter the United States."), as reprinted in 1996 U.S.C.C.A.N. 1074, 1074-75. Thus, the Court of International Trade correctly concluded that it lacked jurisdiction over Sakar's claim under 28 U.S.C. § 1581(i)(4) as it relates to 28 U.S.C. § 1581(i)(1).

IV.

Finally, citing <u>Conoco Inc. v. United States</u>, 18 F.3d 1581 (Fed. Cir. 1994), Sakar argues that jurisdiction in the Court of International Trade was proper based upon what it refers to as "non-statutory, judicially-granted" review. We do not agree. The Court of International Trade, like all federal courts, is a court of limited jurisdiction. <u>Norsk Hydro Can., Inc. v. United States</u>, 472 F.3d 1347, 1355 (Fed. Cir. 2006). It possesses only that power authorized by the Constitution and federal statutes, which is not to be expanded by judicial decree. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). In <u>Conoco</u>, we did not hold that the appellants were entitled to "non-statutory, judicially-granted" review. Instead, starting from the presumption that agency action is subject to judicial review, we analyzed various federal statutes in order to determine which statute provided jurisdiction over the appellants' case and, thus, where jurisdiction was proper (i.e., in the Court of International Trade or in the appropriate district court). <u>Conoco</u>, 18 F.3d at 1585-1590. <u>Conoco</u> provides no support for Sakar's concept of "non-statutory, judicially-granted" review. Sakar's final jurisdictional argument thus fails.

CONCLUSION

For the foregoing reasons, we conclude that the Court of International Trade lacked jurisdiction over Sakar's suit. Thus, we vacate the decision of the Court of International Trade and remand the case to the court with the instruction that it dismiss Sakar's complaint for lack of jurisdiction. Because we conclude that the Court of International Trade did not have jurisdiction over Sakar's suit, we do not address the

decision by the court to dismiss Sakar's claim under USCIT Rule 12(b)(5) for failure to state a claim upon which relief could be granted.

<u>VACATED</u> and <u>REMANDED</u>

COSTS

No costs.