# United States Court of Appeals for the Federal Circuit

2007-1444

SALMON SPAWNING & RECOVERY ALLIANCE,
NATIVE FISH SOCIETY and CLARK-SKAMANIA FLYFISHERS,

Plaintiffs-Appellants,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION,
DIRK KEMPTHORNE, Secretary of the Interior, UNITED STATES
DEPARTMENT OF THE INTERIOR, UNITED STATES FISH AND WILDLIFE
SERVICE, CARLOS GUTIERREZ, Secretary of Commerce, UNITED STATES
DEPARTMENT OF COMMERCE, D. ROBERT LOHN, in his official capacity,
DEBORAH J. SPERO, in her official capacity, H. DALE HALL, in his
official capacity, W. RALPH BASHAM, in his official capacity, and
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
NATIONAL MARINE FISHERIES SERVICE,

Defendants-Appellees.

Svend A. Brandt-Erichsen, Heller Ehrman LLP, of Seattle, Washington, argued for plaintiffs-appellants. With him on the brief was Michael R. Thorp.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief was Michael Bancroft, Attorney Advisor, Office of General Counsel, National Oceanic and Atmospheric Administration, of Seattle, Washington.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

2007-1444

SALMON SPAWNING & RECOVERY ALLIANCE,
NATIVE FISH SOCIETY and CLARK-SKAMANIA FLYFISHERS,

Plaintiffs-Appellants,

v.

UNITED STATES CUSTOMS AND BORDER PROTECTION,
DIRK KEMPTHORME, Secretary of the Interior,
UNITED STATES DEPARTMENT OF THE INTERIOR,
UNITED STATES FISH AND WILDLIFE SERVICE,
CARLOS GUTIERREZ, Secretary of Commerce,
UNITED STATES DEPARTMENT OF COMMERCE,
D. ROBERT LOHN, in his official capacity,
DEBORAH J. SPERO, in her official capacity,
H. DALE HALL, in his official capacity,
W. RALPH BASHAM, in his official capacity,
and NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION NATIONAL
MARINE FISHERIES SERVICE,

Defendants-Appellees.

Appeal from the United States Court of International Trade in case no. 06-00191, Judge Judith M. Barzilay

_____

DECIDED: December 18, 2008
_____

ON PETITION FOR REHEARING

Before MICHEL, <u>Chief Judge</u>, GAJARSA, <u>Circuit Judge</u>, and YOUNG, <u>District Judge</u>*.
_____

*    The Honorable William G. Young, District Judge, United States District Court for the District of Massachusetts, sitting by designation.

GAJARSA, <u>Circuit Judge</u>.

This case concerns the Endangered Species Act ("ESA") and the scope of the jurisdiction of the United States Court of International Trade. Plaintiffs-Appellants Salmon Spawning and Recovery Alliance, Native Fish Society, and Clark-Skamania Flyfishers (collectively "Salmon Spawning" or "plaintiffs") appeal a final judgment of the Court of International Trade dismissing their complaint against various federal agencies and officials (the "defendants") for lack of subject matter jurisdiction. <u>Salmon Spawning & Recovery Alliance v. Basham</u>, 477 F. Supp. 2d 1301 (Ct. Int'l Trade 2007) (<u>Salmon Spawning II</u>). The complaint alleges that the defendants violated their duties under the ESA when they failed to enforce the ban on importing endangered and threatened salmon and steelhead into the United States and failed to consult with National Marine Fisheries Service regarding this lack of enforcement as required under section 7(a)(2) of the ESA. On July 15, 2008, we issued a decision in which we concluded that the Court of International Trade erred in dismissing the case for lack of standing and remanded to the court to determine in the first instance whether plaintiffs' claim under section 7(a)(2) of the ESA falls within the exclusive jurisdiction of the Court of International Trade. <u>Salmon Spawning & Recovery Alliance v. United States</u>, 532 F.3d 1338 (Fed. Cir. 2008).

On August 29, 2008, defendants filed a petition for rehearing for the limited purpose of reconsidering statements made in this court's original opinion regarding whether the Court of International Trade may exercise "supplemental" jurisdiction pursuant to 28 U.S.C. § 1367(a). In response Salmon Spawning elected to take no

2

position on the issue presented by the petition. All parties agreed that the relief requested by the petition would not alter the outcome of the appeal; we granted the petition solely so that this court may issue a revised opinion; and we withdrew the previous opinion at 532 F.3d 1338. Our revised opinion follows.

I.

A. The Endangered Species Act

The Supreme Court explained in Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 (1978) ("TVA"), that in passing the ESA Congress intended "to halt and reverse the trend toward species extinction." In keeping with this mandate, section 9(a)(1)(A) of the ESA makes it unlawful for any person (including a federal agency) to import an endangered or threatened species into the United States. 16 U.S.C. §1538(a)(1)(A). The ESA provides that its provisions shall be enforced by the Secretary of the Interior (who has designated enforcement responsibility to the U.S. Fish & Wildlife Service); the Secretary of Commerce (who has designated enforcement responsibility to National Marine Fisheries Service); the Secretary of the Treasury (who has designated enforcement responsibility to U.S. Customs and Border Protection); and the Coast Guard. See 16 U.S.C. § 1540(e)(3) ("Any person authorized by the Secretary, the Secretary of the Treasury, or the Secretary of the Department in which the Coast Guard is operating, to enforce this chapter may detain for inspection and inspect any package, crate, or other container . . . upon importation or exportation. . . . Such person so authorized may search and seize, with or without a warrant, as authorized by law.").

3

2007-1444

In addition, the ESA provides additional constraints on all federal agencies. Section 7(a)(2) mandates:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary [of Commerce or the Interior], insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species.

16 U.S.C. § 1536(a)(2). Section 7(a)(2) "imposes a substantive (and not just procedural) statutory requirement." Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2535 (2007). As the Supreme Court explained in TVA, "Section 7 . . . compels agencies not only to consider the effect of their projects on endangered species, but to take such actions as are necessary to insure that species are not extirpated as the result of federal activities." TVA, 437 U.S. at 188 (emphasis in original).[1]

## B. Salmon and Steelhead Importation

Included in the species that have been designated endangered or threatened are twenty-six populations of West Coast salmon and steelhead (the "ESA-listed salmon"). 50 C.F.R. § 223.1102(c). Customs and Fish & Wildlife officials are stationed at the

---

[1] The regulations implementing section 7(a)(2) define "action" as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas" and explain that "[e]xamples include, but are not limited to: (a) actions intended to conserve listed species or their habitat; (b) the promulgation of regulations; (c) the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid; or (d) actions directly or indirectly causing modifications to the land, water, or air." 50 C.F.R. § 402.02.

4

2007-1444

ports of entry into the United States and are tasked with enforcing the importation ban on the ESA-listed salmon. See 19 C.F.R. § 12.26(g)(1) ("All import shipments of fish and wildlife subject to the regulations or permit requirements of the U.S. Fish and Wildlife Service, published pursuant to the Endangered Species Act of 1973, 16 U.S.C. § 1531 . . . , shall be subject to examination or inspection by that agency's officer serving the port of entry, for determination as to permissible release or such other disposition as he may direct.").

Despite these regulations, the complaint, which at this stage in the proceedings we must accept as true, alleges that "[n]either the U.S. Customs and Border Protection, the U.S. Fish & Wildlife Service, nor [Marine Fisheries] enforce the ESA prohibition against the import into the United States of ESA-listed salmon caught in Canada." Compl. ¶ 35; see also Appellants Br. 7 ("Whether by conscious policy or neglect, neither Customs nor Fish & Wildlife make any effort to implement the prohibition on imports of threatened salmon."). In addition, neither Customs nor Fish & Wildlife has consulted with Marine Fisheries, pursuant to section 7 of the ESA regarding their lack of enforcement of the prohibition against importing ESA-listed salmon from Canada into the United States. Compl. ¶ 36.

C.    Procedural History

Plaintiffs are non-profit organizations dedicated to the protection of wild fishes, included the ESA-listed salmon. They initially brought suit in the District Court of the Western District of Washington, under the citizen suit provisions of the ESA and the Administrative Procedure Act ("APA"). Salmon Spawning & Recovery Alliance v. Spero,

5

2007-1444

No. C05-1878Z, 2006 U.S. Dist. LEXIS 28432 (W.D. Wash. May 3, 2006) (Salmon Spawning I). Their two-count complaint alleged: (1) "By allowing continued import of ESA-listed salmon and steelhead in violation of § 9 of ESA, the Defendants are jeopardizing the continued existence of the listed salmon and steelhead in violation of § 7(a)(2)," Compl. ¶ 45 (the "section 9 claim"); and (2) that "it is arbitrary and capricious and not in accordance with law, in violation of the Administrative Procedure Act . . . and a violation of section 7 of the ESA, for the U.S. Customs and Border Protection and U.S. Fish & Wildlife Service to continue to allow the import into the United States of ESA-listed salmon caught in Canada without having completed the consultations required by section 7 of the ESA," Compl. ¶ 51 (the "section 7 claim").

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction. Salmon Spawning I, at *7. They argued that the Court of International Trade had exclusive jurisdiction over the section 9 claim under 28 U.S.C. § 1581(i)(3) because the claim arises out of a law providing for embargoes or other quantitative restrictions on the importation of merchandise, and that accordingly, the Court of International Trade could exercise supplemental jurisdiction over the section 7 claim.[2] The district court agreed and transferred the case to the Court of International Trade "so that the [Court of International Trade] may determine its own jurisdiction," including whether to exercise supplemental jurisdiction over the section 7 claim. Id. at *27-29.

---

[2] The defendants also argued for dismissal on the grounds that the agencies' failures to enforce the ESA are not justiciable. The district court declined to reach this ground.

6

2007-1444

The Court of International Trade did not reach the issue of whether it was the proper forum to adjudicate Salmon Spawning's claims. Rather, it dismissed the case for lack of subject matter jurisdiction on the grounds that no federal court had jurisdiction over the claims. The court found that it was without jurisdiction over the plaintiffs' section 9 claim because the exercise of the agency's enforcement powers "lie solely within the agency's discretion."[3] Salmon Spawning II, 477 F. Supp. 2d at 1308 (citing Heckler v. Chaney, 470 U.S. 821, 830-31 (1985)). Furthermore, the trial court concluded that plaintiffs had no standing to bring their section 7 claim.

Plaintiffs appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (explaining that a federal appellate court always has jurisdiction to determine whether the lower federal court had jurisdiction).

---

[3] On a motion for reconsideration, the Court of International Trade rejected plaintiffs' arguments that the first claim of their complaint was not a claim under section 9, but rather a claim under the substantive provisions of section 7(a)(2). The court noted the District Court for the Western District of Washington had also interpreted the claim as a section 9 claim, and that "any confusion over the nature of the claim stemmed from the complaint's inartful drafting rather than the court's misreading of the text." Salmon Spawning & Recovery Alliance v. Basham, No. 06-00191 (Ct. Int'l Trade May 9, 2007) (Memorandum Order denying Plaintiffs' Motion for Reconsideration). The court also found that even "assuming arguendo that both Courts and Defendants misconstrued Plaintiffs' first claim, the claim would be subsumed by Plaintiffs' second claim, which asserts that Defendants must undergo the § 7(a)(2) consultation process." Id.

2007-1444

II.

A. <u>Jurisdiction over the Section 9 Claim</u>

The district court and the Court of International Trade both interpreted the plaintiffs' first claim as stating a violation of section 9 of the ESA. Plaintiffs now argue that the courts below were in error because the claim alleged a violation of the substantive provisions of section 7(a)(2), not of section 9. The language of the complaint is ambiguous. <u>See</u> Compl. ¶ 45 ("By allowing the continuing import of ESA-listed salmon and steelhead in violation of section 9 of the ESA, the Defendants are jeopardizing the continued existence of the listed salmon and steelhead in violation of § 7(a)(2)."). However, the plaintiffs themselves left no doubt that they initially intended to raise a claim under section 9. In their opposition to defendants' motion to dismiss in the district court, plaintiffs argued that "Plaintiffs' allegation that Defendants are allowing the import of listed salmon, thereby introducing the listed salmon into the United States, is sufficient to state a claim for violation of ESA § 9," citing as support ¶ 45 of their complaint. Plaintiffs' Opposition to Defendants' Motion to Dismiss Complaint, <u>Salmon Spawning v. Spero</u>, No. CO5-1878Z, at 22 (W.D. Wash. Mar. 8, 2006); <u>see also</u> <u>id.</u> at 19 ("Plaintiffs have alleged that Defendants 'allow[] the continued import of ESA-listed salmon.' Complaint ¶ 45. This participation directly violates ESA section 9(a)(1)(A)."). Given that the trial court's interpretation of plaintiffs' complaint is consistent with plaintiffs' own initial representations as to the meaning of the claim, we find no basis for reversing the Court of International Trade's interpretation.

8

To the extent that Salmon Spawning has brought a cause of action alleging that defendants have violated section 9 by allowing the importation of ESA-listed salmon, the district court properly dismissed the claim for lack of subject matter jurisdiction.[4] In substance the claim alleges that the defendants have violated section 9's prohibition on the importation of endangered species by failing to enforce the ban. The Supreme Court recognized in Heckler v. Chaney, 470 U.S. 821 (1985), that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Id. at 831. Accordingly, an agency's decision not to undertake enforcement actions is "presumptively unreviewable" under the APA. Id. at 832; see 5 U.S.C. § 701(a)(2) (precluding judicial review under the APA when "agency action is committed to agency discretion by law"); Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 282 (1987) (explaining that the unavailability of judicial review "to the extent that . . . agency action is committed to agency discretion by law" is a "limitation to the general grant of jurisdiction contained in 28 U.S.C. § 1331"). This presumption of unreviewability has not been

---

[4] The Court of International Trade chose to address issues of federal subject matter jurisdiction prior to the question of whether the claim fell within its exclusive jurisdiction under 18 U.S.C. § 1581. As both questions go to the court's jurisdiction, the district court had discretion to choose the order of the analysis. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-85 (1999) ("While Steel Co. [v. Citizens for Better Environment, 523 U.S. 83 (1998)] reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues. '[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles . . . .' It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

2007-1444

rebutted here.  See Heckler, 470 U.S. at 832-33 ("[T]he presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.").  Rather, the statute makes clear the discretionary nature of the defendants' enforcement powers stating only that officers "may detain for inspection and inspect any package, crate, or other container, including its contents, and all accompanying documents, upon importation"; "may make arrests"; and "may search and seize." 16 U.S.C. § 1540(e)(3) (emphasis added).[5]  Accordingly, plaintiffs' section 9 claim is not justiciable under the APA.

Nor do the citizen suit provisions of the ESA provide jurisdiction.  Section 11(g)(1)(A) of the ESA gives "any person" the right to bring suit "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A).  As we have previously explained, this provision "offers no independent jurisdiction to challenge a federal agency's implementation of the Act." Earth Island Inst. v. Albright, 147 F.3d 1352, 1357 (Fed. Cir. 1998) (citing Bennett v. Spear, 520 U.S. 154 (1997)).  The Supreme Court has explained that the ESA's authorization in section 11(g)(1)(A) of suits to enjoin an agency who is alleged to be in "violation" of any provision of the Act cannot be read to apply to

---

[5]    There is no need to consider here the question left open in Heckler of whether the presumption of unreviewability can be rebutted by a finding that "the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities."  470 U.S. at 833 n.4.  The plaintiffs have not alleged that there was any express policy of non-enforcement.

10

2007-1444

challenges to the implementation or enforcement of the ESA.  Bennett, 520 U.S. at 172-74 (affirming that section 11(g)(1)(A) "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties—both private entities and Government agencies—but is not an alternative avenue for judicial review of the Secretary's implementation of the statute").[6]

We therefore affirm the district court's dismissal of the first claim of the plaintiffs' complaint.

---

[6] Sections 11(g)(1)(B) and 11(g)(1)(C) do delineate two narrow grounds on which an agency's implementation of the ESA can be challenged under the ESA.  It is undisputed, however, that neither of these is applicable here.  Section 11(g)(1)(C) authorizes suits "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 4 [16 U.S.C. § 1533] which is not discretionary with the Secretary."  16 U.S.C. §1540(g)(1)(C).  See Earth Island Inst., 147 F.3d at 1357.  Not only has there been no allegation of a failure under section 4, which relates to the listing of species as endangered, but also plaintiffs acknowledge that defendant's enforcement decisions are discretionary.

Section 11(g)(1)(B) authorizes suits "to compel the Secretary to apply, pursuant to section 6(g)(2)(B)(ii) of this Act, the prohibitions set forth in or authorized pursuant to section 4(d) or section 9(a)(1)(B) of this Act with respect to the taking of any resident endangered species or threatened species within any State."  This provision is only applicable to suits alleging a failure of the Secretary to apply section 6(g)(2)(B)(ii), which authorizes the Secretary to apply the prohibition on "taking" an endangered species under section 9(a)(1)(B) to activities within a State, under certain emergency situations.  Notably, not only does section 11(g)(1)(B) require an allegation of a violation of section 6(g)(2)(B)(ii), both it and section 6(g)(2)(B)(ii) explicitly apply only to the prohibition on domestic "taking" of endangered species under section 9(a)(1)(B).  See Earth Island Inst., 147 F.3d at 1357.

As the Supreme Court has concluded, the narrowness of sections 11(g)(1)(B) and 11(g)(1)(C) demonstrates a clear intention of Congress to preclude judicial review under the ESA for other failures of an agency to enforce the ESA, such as the failure to enforce the import ban of section 9(a)(1)(A) at issue here.  See Bennett, 520 U.S. at 173 ("§ 1540(g)(1)(C) . . . would be superfluous—and worse still, its careful limitation to § 1533 [section 4] would be nullified—if § 1540(g)(1)(A) permitted suit against the Secretary for any 'violation' of the ESA." (emphasis in original)).

11

2007-1444

B. Jurisdiction over the Section 7(a)(2) claim

Plaintiffs' second claim alleges that defendants violated the APA and section 7 of the ESA by allowing the importation of ESA-listed salmon without completing the consultation required by section 7. In other words, this count of the complaint alleges a procedural violation of section 7(a)(2). The district court dismissed the claim for lack of standing.

To establish standing under Article III of the Constitution, a plaintiff must show that (1) it suffered an injury-in-fact that is (2) fairly traceable to the challenged conduct of the defendant and (3) likely redressable by a favorable judicial decision. Figueroa v. United States, 466 F.3d 1023, 1029 (Fed. Cir. 2006) (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).[7]

The Court of International Trade held that plaintiffs' section 7 claim did not satisfy the "redressability" prong of the standing analysis. The trial court concluded that there

---

[7] In addition to this "irreducible constitutional minimum of Article III standing," Canadian Lumber Trade Alliance v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (internal quotation marks omitted), the plaintiff generally must also establish prudential standing by showing that the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970); see also Inv. Co. Inst. v. Camp, 401 U.S. 617, 620 (1971); Canadian Lumber Trade Alliance, 517 F.3d at 1331. Here there is no question that prudential standing requirements have been met. First, to the extent that the suit is properly brought under the citizen suit provision under the ESA, the Supreme Court has held that its broad provisions expand the zone of interest to "all persons." Bennett, 520 U.S. at 164-66. And even if the suit is only proper under the APA, the plaintiffs' interests in protecting the endangered and threatened salmon is at the heart of the interests that section 7(a) of the ESA is designed to protect.

12

was no obligation under section 7 for the federal defendants to consult regarding their decision not to enforce the endangered salmon ban because the consultation requirement is only triggered by affirmative action, not a failure to act. Accordingly, the court reasoned that any injury suffered by the plaintiffs was not capable of being redressed. In reaching this result, the trial court misinterpreted the redressibility prong of the standing analysis. Standing requires that the injury "is likely to be redressed by a favorable decision." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (emphasis added). A favorable decision in the current case would be a holding that defendants do have an obligation to consult under section 7 regarding their failure to enforce the endangered salmon import ban. Rather than focus on whether such a favorable decision would likely provide plaintiffs' redress, the trial court mistakenly reasoned that there would not be a favorable result and thus Salmon Spawning would not be entitled to any relief. This is not an issue of standing but rather a question on the merits. See Litecubes, LLC v. N. Light Prods., Inc., 523 F.3d 1353, 1360 (Fed. Cir. 2008) ("Subject matter jurisdiction does not fail simply because the plaintiff might be unable to ultimately succeed on the merits." (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998))). [8]

---

[8]    The Ninth Circuit has repeatedly faced the issue of whether certain conduct by an agency qualifies as agency action under section 7(a)(2). It has consistently dealt with such claims as raising a question on the merits not as a question of standing. See, e.g., Cal. Sportfishing Prot. Alliance v. FERC, 472 F.3d 593, 596 (9th Cir. 2006).

2007-1444

Under a proper analysis, the plaintiffs have sufficiently alleged the elements of standing to preclude dismissing the case for lack of standing based on the pleadings.[9] Plaintiffs have alleged, inter alia, that their members frequent the habitat areas of ESA-listed salmon for recreation and attempt to observe the endangered salmon spawning. Compl. ¶ 3. The Supreme Court has recognized that injury to such interests can form the basis for an injury-in-fact. See Lujan, 504 U.S. at 562-63 ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."); Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 936 (Fed. Cir. 1991) ("The interests alleged to have been injured may reflect aesthetic, conservational, and recreational as well as economic values." (quoting Sierra Club v. Morton, 405 U.S. 727, 738 (1972))). Plaintiffs allege that the aesthetic,

---

[9] What is required to establish standing depends on the stage of the proceeding. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). As the Supreme Court has explained:

> Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiffs' case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

Id. (internal citations and quotation marks omitted). We make no judgment as to whether plaintiffs will be able to satisfy their burden of proving standing should this case proceed to summary judgment or trial.

14

recreational, and environmental interests of their members are being adversely affected and irreparably injured by defendants' failure to prevent the importation of endangered salmon because this failure has jeopardized the continued existence of the listed salmon.[10] Compl. ¶ 6. At this early stage in the proceedings, this allegation is sufficient to establish an injury-in-fact fairly traceable to defendants.

Moreover, plaintiffs' section 7 claim is attempting to enforce a procedural right. Such rights can be asserted "without meeting all the normal standards for redressability and immediacy," as long as "the procedures in question are designed to protect some threatened concrete interest of [the plaintiff] that is the ultimate basis of his standing." Lujan, 504 U.S. at 572 n.7, 573 n.8. Thus, we agree with the Ninth Circuit that "to establish standing by alleging procedural harm, the members must show only that they have a procedural right that, if exercised, could protect their concrete interests and that those interests fall within the zone of interests protected by the statute at issue." Defenders of Wildlife v. U.S. Envtl. Prot. Agency, 420 F.3d 946, 957 (9th Cir. 2005) (emphasis in original), overruled on other grounds sub nom. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518 (2007). The consultation requirements of section 7 are designed to make certain that every federal agency takes "whatever actions are necessary to ensure the survival of each endangered and threatened species." Sierra Club v. Glickman, 156 F.3d 606, 616 (5th Cir. 1998) (citing

---

[10] According to the complaint, many of the ESA-listed salmon spawn in Washington's Columbia River and Puget Sound, and then mature fish migrate north to Canadian and Alaskan waters. A significant number of these salmon are caught during their return migration back to the United States in Canadian commercial and sport fisheries, including ones catering to United States residents.

15

TVA, 437 U.S. at 183-84); see also TVA, 437 U.S. at 185 ("[T]he legislative history undergirding § 7 reveals an explicit congressional decision to require agencies to afford first priority to the declared national policy of saving endangered species."). Thus, because consultation could require the defendants to more actively enforce the import ban, consultation could protect the plaintiffs' interests in the survival of the ESA-listed salmon, and it is precisely this interest which the procedure was designed to protect. In such a situation, a claim alleging a violation of the procedural requirements of section 7(a)(2) satisfies the redressability prong of standing. See Defenders of Wildlife, 420 F.3d at 958 (concluding that the standing requirements for procedural harm were met in a section 7 claim because "the use of improper section 7 consultation . . . lessens the likelihood that the impact of the proposed action on listed species and their habitats will be recognized and accounted for in making the transfer decision"); Glickman, 156 F.3d at 616 (finding plaintiffs had standing to bring a procedural claim under section 7(a)(2) because "the procedures in question were designed to protect Sierra Club's threatened concrete interest in this case"). We, therefore, conclude that the trial court improperly dismissed the case for lack of standing. Cf. Bennett, 520 U.S. at 162-71 (holding that plaintiffs who have economic and other interests in water from the Klamath Irrigation Project had standing to bring a claim under the APA alleging that a biological opinion

16

2007-1444

issued by the Fish & Wildlife Service regarding the Klamath Project violated section 7 of the ESA).[11]

Because the Court of International Trade dismissed the case for lack of standing, it never considered whether plaintiffs' section 7 claim fell within the exclusive jurisdiction of the Court of International Trade. Nor did the District Court for the Western District of Washington ever evaluate whether the Court of International Trade had independent jurisdiction over section 7 claims. Rather, the district court found that the Court of International Trade would have discretion to exercise supplemental jurisdiction over the section 7 claim on the basis of the section 9 claim.

Because supplemental jurisdiction cannot be exercised when a court does not have original jurisdiction over at least one claim in the suit, 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in

---

[11] The Heckler presumption of unreviewability does not preclude subject matter jurisdiction over plaintiffs' procedural section 7(a)(2) claim. If the consultation requirements of the section apply, they are mandatory. Thus the allegation that the agency has failed to meet its duty to consult is a proper "failure to act" claim under the APA. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (holding that a claim under the APA for a "failure to act" requires there to be a "discrete agency action that it is required to take" (emphasis in original)). Moreover, the discretionary nature of an agency action does not preclude the applicability of section 7. Indeed, the Supreme Court recently upheld implementing regulations that state that section 7(a)(2) only applies to discretionary agency actions and affirmed that section 7(a)(2) "applies to every discretionary agency action." Nat'l Assoc. of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518 (2007). We note, however, that contrary to plaintiffs' arguments, National Association of Home Builders does not address what constitutes agency action under section 7(a)(2). The reasoning of Heckler may be relevant to that question, which goes to whether plaintiffs' section 7 claims states a cause of action upon which relief can be granted.

2007-1444

the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); see Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety. . . . In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 . . . ."), and because we affirm the Court of International Trade's dismissal of the section 9 claim for lack of subject matter jurisdiction, we need not consider and, therefore, do not decide whether the Court of International Trade could have properly exercised supplemental jurisdiction over Salmon Spawning's section 7 claim under 28 U.S.C. § 1367(a).[12]

Instead, for the Court of International Trade to have jurisdiction over the current action, plaintiffs' section 7 claim must fall within the court's exclusive jurisdiction under 28 U.S.C. § 1581. There are two possible sources of Court of International Trade jurisdiction for the claim: (1) § 1581(i)(3), which provides the Court of International Trade with exclusive jurisdiction over civil actions that "arise[] out of any law of the United States providing for . . . embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety" and (2) § 1581(i)(4), which provides the Court of International Trade with

---

[12] On petition for rehearing, defendants argue that 28 U.S.C. § 1367(a) does not apply to the Court of International Trade. Because the issue has not been fully briefed and does not impact the outcome of the present appeal, we decline to take on the issue here.

18

exclusive jurisdiction over civil actions arising from "administration and enforcement with respect to the matters" referred to in § 1581(i)(3).  See Sakar Int'l Inc. v. United States, 516 F.3d 1340, 1346 (Fed. Cir. 2008) ("[S]ection 1581(i)(4) as it relates to section 1581(i)(3) provides the Court of International Trade with jurisdiction over cases that arise out of any law providing for the administration and enforcement of an embargo.").

While an appellate court has "inherent jurisdiction to determine whether a lower tribunal had jurisdiction," Int'l Custom Prods. v. United States, 467 F.3d 1324, 1326 (Fed. Cir. 2006), it also has discretion to remand issues, even jurisdictional ones, to the trial court when that court has not had the opportunity to consider the issue in the first instance.  See United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 307 (2d Cir. 1994) (remanding "the issue of federal question jurisdiction to the district court for consideration in the first instance" and noting that this course of action was "particularly appropriate" when the district court never considered the issue and "the issue has been given a somewhat cursory and confused treatment on appeal"); Mitchell Food Prods., Inc. v. United States, 43 Fed. Appx. 369, 369 (Fed. Cir. 2002) ("Because the [Court of International Trade] did not definitively resolve the standing and real party in interest objections, . . . we vacate and remand for a determination of these issues in the first instance."); Cohen v. World Omni Fin. Corp., 254 Fed. Appx. 790, 793 (11th Cir. 2007) ("[W]e remand [the case] to the district court to consider its subject matter jurisdiction."); Tagayun v. Lever & Stolzenberg, 239 Fed. Appx. 708, 708 (3d Cir. 2007) ("We will vacate the order of dismissal and remand with instructions to the District Court to consider in the first

19

2007-1444

instance whether it had subject matter jurisdiction and personal jurisdiction to consider Appellants' claims."); cf. Chen v. Ashcroft, 378 F.3d 1081, 1088 (9th Cir. 2004) ("When confronted with a novel legal issue, we could decide the case based on application of law to the facts. However, we believe the better course in this case is to remand to the agency for its consideration of the issue in the first instance.").

The issue of whether plaintiffs' section 7 claim falls within the Court of International Trade's exclusive jurisdiction, or instead should be brought in a district court, is one of first impression for this court and it raises difficult, novel issues concerning the scope of the Court of International Trade's jurisdiction. The parties have not briefed the issue,[13] neither the district court nor the Court of International Trade addressed the issue in the instant case, and it does not appear that the Court of International Trade has ever had the opportunity to consider such an issue in prior cases. Under these circumstances, we believe that the better course of action is to remand the case to the Court of International Trade to determine in the first instance whether the section 7 claim falls within its exclusive jurisdiction. In making this determination, the court will need to consider whether the suit "arises out of any law of the United States providing for . . . embargoes or other quantitative restrictions on the importation of merchandise" or for the "administration and enforcement with respect" to

---

[13] Neither plaintiffs nor defendants briefed the issue as they are currently both in agreement that the case is properly before the Court of International Trade, plaintiffs having abandoned their initial position that the proper forum for the case was the District Court for the Western District of Washington. The parties' agreement on the issue, however, is not dispositive. Courts have an independent obligation to determine their own jurisdiction. See Dowd v. United States, 713 F.2d 720, 726 (Fed. Cir. 1983) ("Lack of jurisdiction may not be waived by the parties nor ignored by the court.").

2007-1444

such embargoes under § 1581(i), and also whether there is a conflict between § 1581(i) and section 11 of the ESA which vests jurisdiction over citizen suits brought pursuant to the ESA with the district courts. 16 U.S.C. § 1540(g) ("The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty, as the case may be.").

If the Court of International Trade determines that the section 7 claim does not fall within its jurisdiction, it should transfer the case back to the District Court for the Western District of Washington. If it concludes that it does have jurisdiction over the claim, it should proceed with further proceedings consistent with this opinion.[14]

## III.

For the foregoing reasons, the Court of International Trade's dismissal of plaintiffs' section 9 claim is affirmed. The court's dismissal of the section 7 claim for lack

---

[14] The trial court's conclusion that there was no obligation under section 7 for the federal defendants to consult regarding their decision not to enforce the endangered salmon ban because it does not constitute agency action under the statute, while not a question of standing, goes directly to the merits issue of whether plaintiffs have stated a cause of action for which relief can be granted. Although the parties have briefed the issue, we do not believe it is appropriate for us to address whether a dismissal for failure to state a claim on this ground would be proper until after there has been a final decision as to whether this case was properly transferred to the Court of International Trade. If the Court of International Trade does not have jurisdiction, then it will be for the District Court of the Western District of Washington and the Ninth Circuit to determine whether section 7(a)(2) applies to the conduct complained of here.

21

of standing is reversed, and the case is remanded to the Court of International Trade to determine whether the surviving claim falls within its exclusive jurisdiction.

<u>AFFIRMED IN PART, REVERSED IN PART, AND REMANDED</u>.

No costs.

2007-1444